**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| LAWRENCE SHEINBERG and GILES HAZEL on behalf of themselves and others similarly situated, | : | CIVIL ACTION |
| | : | NO. |
| Plaintiffs, | : | |
| | : | |
| v. | : | *Civ 00—6041, CKJ/H)* |
| | : | |
| ROBERT SORENSEN; DUROLITE INTERNATIONAL, INC.; LITETRONICS INTERNATIONAL, INC. | : | **COMPLAINT** |
| | : | |
| Defendants. | : | *12/14/00* |

**INTRODUCTION**

1.      This is a civil action for compensatory damages, punitive damages, and other relief brought by former non-union employees of Duro-Test Corporation ("Duro-Test") for violation of Section 16 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216; violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 et seq.; violation of the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. §2101 et seq.; violation of the New Jersey Wage Payment Statute, N.J.S. 34:11-4.2, et seq., and tortious conversion under New Jersey common law.

2.      At all times mentioned herein Duro-Test was a corporation organized and existing under the laws of the State of New Jersey with its principal place of business located in Clifton, New Jersey.  Duro-Test was engaged in the manufacture and sale of lighting products.

3.      At all times mentioned herein defendant, Litetronics International, Inc. ("Litetronics") was a corporation organized and existing under the laws of the State of Illinois

720323_1

with its principal place of business located in Alsip, Illinois. Litetronics was also engaged in the manufacture and sale of lighting products.

4.     At all times mentioned herein, Duro-Test and Litetronics were wholly owned subsidiaries of defendant, Durolite International, Inc. ("Durolite"), a corporation organized and existing under the laws of the State of Illinois with its principal place of business located in Alsip, Illinois.

5.     At all times mentioned herein, defendant, Robert Sorensen ("Sorensen") was an officer, director, and controlling shareholder of Duro-Test, Litetronics and Durolite and resides outside the State of New Jersey.

6.     At all times relevant hereto, Durolite, Duro-Test, and Litetronics shared common ownership, and common officers and/or directors. The operations of Duro-Test were dependent upon those of Durolite and Litetronics.

7.     Sorensen and Durolite formulated and implemented all personnel policy decisions for Duro-Test and Litetronics, including the decision to close Duro-Test's two facilities located in or near Clifton, New Jersey. Durolite, Duro-Test, and Litetronics (collectively referred to as the "Employer") constituted a single employer under and for the purposes of FLSA, ERISA, and WARN.

8.     The Employer was, at all times relevant hereto, an "employer" within the meaning of Section 3(d) of FLSA, 29 U.S.C. §203(d); Sections 3(5), (11), and (12) of ERISA, 29 U.S.C. §1002(5), (11), and (12); and WARN, 29 U.S.C. §2101 (a)(1).

9.     Horizon Blue Cross Blue Shield of New Jersey, Inc. ("Blue Cross") administered Duro-Test's self-insured employee health benefit plan ("the Plan"). The plan is an

2

"employee welfare benefit plan" under Section 3(l) of ERISA, 29 U.S.C. §1002(l). Sorensen, Durolite, Litetronics, and Duro-Test exercised discretionary authority or control regarding the management and/or disposition of the assets of the Plan and thus, at all relevant times, were fiduciaries within the meaning of ERISA Section 3(21), 29 U.S.C. §1002(21).

10.    Plaintiffs are "representatives" of the salaried and commissioned employees of the Employer within the meaning of WARN, 29 U.S.C. §2101(a)(4), and have standing to sue on behalf of the salaried employees of the Employer pursuant to WARN, 29 U.S.C. §2104(a)(5).

11.    Plaintiff, Lawrence Sheinberg ("Sheinberg") was a Senior Incandescent Engineer employed by the Employer for 36 years. Sheinberg is a resident of Howell, New Jersey.

12.    Plaintiff, Giles Hazel ("Hazel") was a Marketing Manager employed by the Employer for 30 years. Hazel is a resident of Bloomingdale, New Jersey.

13.    Sheinberg and Hazel (collectively the "individual plaintiffs") are "participants" in the Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7), and "employees" within the meaning of Section 3(e)(1) of FLSA, 29 U.S.C. §203(c). At all times during their employment, plaintiffs were engaged in commerce or in the production of goods for commerce within the meaning of FLSA. Individual plaintiffs bring this action for and in behalf of themselves and other "participants" within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(7), and employees or former employees of the Employer similarly situated within the meaning of Section 16(b) of FLSA, 29 U.S.C. §216(b).

3

720323_1

## CLASS ACTION ALLEGATIONS

14.     Individual plaintiffs bring this action pursuant to Rules 23(a) and (b)(2) of

the Federal Rules of Civil Procedure on behalf of a class of employees who shall be defined as

"all non-union wage earner participants in the Duro-Test Corporation Horizon Blue Cross Blue

Shield of New Jersey, Inc., employee medical benefit plan."

15.     The class is so numerous that joinder of all members is impracticable.

16.     There are questions of law or fact common to the class.

17.     The claims of the representative parties are typical of the claims of the

class.

18.     The representative parties will fairly and adequately protect the interests of

the class.

## JURISDICTION

19.     This Court has original jurisdiction of this action pursuant to 28 U.S.C. §

1331, as this action presents federal questions arising from the laws of the United States,

including ERISA, 29 U.S.C. § 1001 et seq., FLSA 29 U.S.C. § 216, and WARN, 29 U.S.C. §

2101 et seq.

## VENUE

20.     Venue is proper in this district under 28 U.S.C. §1391(b); 29 U.S.C.

§1132; and 29 U.S.C. §2104(a)(5) because the Employer's violations are alleged to have

occurred within this district and because the Employer transacts business within this district.

4

720323_1

## FACTS

21.    Duro-Test for many years was in the business of manufacturing and marketing lighting products, primarily incandescent and fluorescent bulbs and fixtures.

22.    Litetronics was also in the business of manufacturing and marketing lighting products, primarily halogen bulbs and fixtures.

23.    Duro-Test sold mostly to end-users through a large nationwide sales force while Litetronics sold mostly to distributors.

24.    Sorensen had been involved in the lighting business for about 25 years, and had acquired Duro-Test.

25.    In November of 1995, Duro-Test, Sorensen and Litetronics became part of a unified venture. Durolite, a newly developed corporation, acquired the stock of both Duro-Test and Litetronics of which Sorensen had been a 56% shareholder. Sorensen became a 32% shareholder of Durolite, and its largest shareholder. Sorensen was empowered to designate three of Durolite's seven member Board of Directors, including himself.

26.    Beginning in November, 1995, Sorensen served as Chairman and Chief Executive Officer of Durolite, Duro-Test, and Litetronics.

27.    Sorensen's announcement of the new regime to Duro-Test employees in November of 1995 emphasized how close the relationship would be, "I am pleased to announce that we have merged Duro-Test Corporation and Litetronics International, Inc. Duro-Test has a fine heritage and so does Litetronics. Together we will build the best lighting company in the world."

28.    Sorensen was active in the management of both Duro-Test and Litetronics.

5

720323_1

29.    In 1997, Duro-Test entered into a collective bargaining agreement with its union employees which stated that "in the event that Duro-Test chooses to close a plant, Duro-Test would provide continued medical insurance for separated employees for a period not to exceed three months."

30.    Historically, non-union employees, were advised by Duro-Test management that they would receive at least the same level of benefits offered to union employees.

31.    Duro-Test's financial condition was poor in November of 1995 and it continued to deteriorate.  Its principal lender was Fleet Bank ("Fleet"), which held a security interest in much of its assets.  In 1995, Duro-Test agreed with Fleet that its receipts would be delivered to a Fleet lock box.  Fleet also provided financing to Litetronics.

32.    By the fall of 1999, the financial condition of the combined entity became dire.

33.    Sorensen began to structure a transaction whereby Duro-Test would be stripped of its valuable assets, the Duro-Test plants would close without warning to Duro-Test employees, valuable assets would be transferred to Litetronics, and Litetronics would be relieved of significant debt.

34.    When the restructuring had run its course, Sorensen ended up as 100% owner of a viable corporation, Litetronics.  Durolite and Duro-Test appear to have become insolvent.  Fleet Bank, the secured lender for Duro-Test were left holding all of Duro-Test's assets while the beneficiaries of the health plans were left with unpaid medical and hospital bills

720323_1

with no health insurance for the three months after the plant closure and without wage and commission payments having been made.

35.    On February 18, 2000, the Duro-Test plant was closed and many of the paychecks and commission checks issued to Duro-Test employees bounced. Employees who had incurred medical expenses, enormous expenses in some cases, learned that Horizon would not honor their claims. As a result of the Litetronics' transaction, Sorensen ended up with 100% interest in Litetronics which had been liberated from its indebtedness to Fleet and the lien on the Litetronics assets occasioned by the combination with Durolite and Duro-Test.

36.    Employees who worked from February 11, 2000, through February 18, 2000, were not paid at all.

## FIRST CAUSE OF ACTION

37.    The Employer has failed to maintain health insurance coverage and pay wages, benefits and sales commissions.

## SECOND CAUSE OF ACTION

38.    By failing to pay its employees wages, sales commissions and benefits, the Employer violated Section 6 of FLSA, 29 U.S.C. §206 and the New Jersey Wage Payment Statute, N.J.S. 34:11-4.2 et seq.

39.    The Employer engaged in these practices willfully and in bad faith.

## THIRD CAUSE OF ACTION

40.    By failing to make premium payments and maintain health insurance coverage, the Employer violated the terms of the Plan and Section 502 of ERISA, 29 U.S.C. §1132.

720323_1

## FOURTH CAUSE OF ACTION

41.    By the conduct described in the paragraphs above, including failing to fund the Plan and failing to safeguard Plan assets (i.e., the employees' contributions deducted from their paychecks), defendants have violated ERISA Section 404, 29 U.S.C. §1104, in that they:

(a)    Failed to discharge their fiduciary duty with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries in violation of ERISA Section 404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A); and

(b)    Failed to discharge their fiduciary duty with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA Section 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

42.    By participating knowingly in Duro-Test's breach of fiduciary duty, knowing such acts or omissions to be breaches of fiduciary duty, Sorensen and Litetronics are liable for Duro-Test's breach of fiduciary duty pursuant to ERISA Section 405(a)(1), 29 U.S.C. §1105(a)(1).

43.    By failing to make reasonable efforts under the circumstances to remedy DuroTest's breach of fiduciary duty, despite their knowledge of such breach, Sorensen and Litetronics are liable for Duro-Test's breach of fiduciary duty pursuant to ERISA Section 405(a)(3), 29 U.S.C. §1105(a)(3).

8

720323_1

## FIFTH CAUSE OF ACTION

44.     By the conduct described above, the Employer ordered a "plant closing" within the meaning of WARN, 29 U.S.C. §2101(a)(2), resulting in the employment termination of the employees including the individual plaintiffs, as well as other employees of the Employer.

45.     The Employer never complied with the requirements to provide written notice of said plant closing within the 60-day period mandated by the statute. The failure to provide said notice constituted a violation of WARN, 29 U.S.C. §2102(a).

46.     All of the individual employees worked for the Employer, did not receive timely notice as required by WARN as a result of the Employer's failure to comply with WARN, 29 U.S.C. §2102, and are "aggrieved employees" within the meaning of 29 U.S.C. §2104(a)(7).

## SIXTH CAUSE OF ACTION

47.     The Employer withheld from its employees paychecks certain amounts for employee contributions to the health insurance premiums.

48.     The Employer has failed to pay to Blue Cross the amounts withheld from the employees' paychecks.

49.     The Employer's failure to forward monies withheld from its employees' paychecks to Blue Cross constitutes tortious conversion.

50.     Sorensen directed the Employer not to forward to Blue Cross the monies the Employer withheld from its employees' paychecks. Sorensen is liable individually for all amounts withheld from the employees' paychecks which have not been forwarded to Blue Cross.

720323_1

## REQUEST FOR RELIEF

WHEREFORE, plaintiffs respectfully request the following judgment in favor of plaintiffs and against defendants:

(1)    All unpaid wages and sales commissions;

(2)    An additional amount equal to the unpaid wages and sales commissions as liquidated damages;

(3)    All damages attributable to the Employer's failure to pay health insurance premiums to Blue Cross;

(4)    All damages attributable to the Employer's breach of fiduciary duty;

(5)    Back pay for each day of violation of the WARN Act at a rate of compensation not less than the higher of (i) the average rate received by such employee during the last three (3) years of the employee's employment; or (ii) the final regular rate received by such employee;

(6)    Benefits under the employee benefit plan(s) applicable to such employee, including the cost of medical expenses incurred during the employment loss which would have been covered under the employee benefit plan(s) if the employment loss had not occurred, under WARN, 29 U.S.C. §2104(a)(1).

(7)    A civil penalty of not more than $500 for each day of violation under WARN, 29 U.S.C. §2104(a)(3);

(8)    Punitive damages;

(9)    Reasonable attorney's fees and costs under FLSA; 29 U.S.C. §216, Section 502 of ERISA, 29 U.S.C. §1132; and WARN, 29 U.S.C. §2104(a)(6); and

10

720323_1

(10)    Such other legal or equitable relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury.

SCHNADER HARRISON SEGAL
& LEWIS, LLP

Dated:   December 6, 2000                    By:_____

Bradford M. Brush (BB9210)
Attorney for Defendants

Of Counsel:
Robert B. Bodzin, Esquire
SCHNADER HARRISON SEGAL & LEWIS, LLP
1600 Market Street - Suite 3600
Philadelphia, PA  19103-7286
(215) 751-2017

720323_1