

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

I.    PRELIMINARY STATEMENT .................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 3

      A.    Plaintiffs' Factual Presentation Is Inaccurate And Misleading .............................. 3

            1.    There Was No "Merger." ............................................................................. 3

            2.    The "Lock Box" was for Customer Revenues Only. .................................. 4

            3.    There Was No Parity Between Plaintiffs and
                  Their Unionized Counterparts .................................................................... 5

            4.    Duro-Test and Litetronics Operated Separately. ........................................ 5

            5.    The Transfer of Business Benefited Duro-Test. ......................................... 6

            6.    Plaintiffs' Assertion of "Siphoning" Is Fiction ........................................... 6

            7.    The Sale of Litetronics Benefited Duro-Test. ............................................. 7

            8.    Plaintiffs' Description of Duro-Test's Closure Is Not Accurate. .............. 8

      B.    Procedural Background Of This Motion ................................................................. 8

III.  ARGUMENT AND AUTHORITIES ............................................................................. 10

      A.    Plaintiffs Have Not Met Their Summary Judgment Burden
            On Their Fair Labor Standards Act Claims ........................................................... 10

      B.    Plaintiffs Have Fallen Far Short Of Their
            Summary Judgment Burden On Their ERISA Claims ......................................... 15

            1.    Plaintiffs Are Precluded From the Relief They Seek ................................. 15

            2.    Plaintiffs' Attempt To Impose "Fiduciary" Status Upon
                  Sorensen By Relying on The District Three Litigation Is Improper ....... 17

            3.    Plaintiffs' Have Not Met Their Summary Judgment Burden
                  To Establish That Defendants Are ERISA Fiduciaries ............................ 21

C.   Plaintiffs' WARN Act Claim Fail Because Plaintiffs Have
No Evidence That Defendants Are WARN Act Employers ...................................24

D.   Defendants are Entitled to the Affirmative Defenses to WARN Liability ..........26

IV.   CONCLUSION ..........................................................................................................27

## TABLE OF AUTHORITIES

## CASES

Adams v. Avondale Indus., Inc.,
  905 F.2d 943 (6th Cir. 1990) ........................................................................................ 16

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986)........................................................................................ 10,12,22

Armbruster v. Quinn,
  711 F.2d 1332 (6th Cir. 1983) ...................................................................................... 26

Bannistor v. Ulman,
  287 F.3d 394 (5th Cir. 2002) ...................................................................................22,23

Baystate Alternative Staffing, Inc. v. Herman,
  163 F.3d 668 (1st Cir. 1998)........................................................................................ 11

Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.,
  402 U.S. 313 (1971)..................................................................................................... 19

Board of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc. Pension Fund v.
Centra,
  983 F.2d 495 (3d Cir. 1992).......................................................................................... 17

Brookridge Funding Corp. v. Northwestern Human Servs,
  175 F. Supp. 2d 355 (D. Conn. 2001)............................................................................. 9

Burlington N. R.R. Co. v. Huyndai Merch. Marine Co.,
  63 F.3d 1227 (3d Cir. 1995).......................................................................................... 19

Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. and Research Found.,
  334 F.3d 365 (3d Cir. 2003).......................................................................................... 22

Commodity Futures Trading Comm'n v. Bd. of Trade,
  701 F.2d 653 (7th Cir. 1983) ........................................................................................ 19

Confer v. Custom Eng'g Co.,
  952 F.2d 34 (3d Cir. 1991)............................................................................................ 22

Council of Alt. Political Parties v. Hooks,
  179 F.3d 64 (3d Cir. 1999) ........................................................................................... 18

Curtiss-Wright Corp. v. Schoonejongen,
  514 U.S. 73 (1995)....................................................................................................... 15

Dole v. Haulway, Inc.,
    723 F. Supp. 274 (D.N.J. 1989)................................................................................. 11,12

Don King Prods. Inc. v. Douglas,
    742 F. Supp. 741 (S.D.N.Y. 1990) ................................................................................. 21

Donovan v. Agnew,
    712 F.2d 1509 (1st Cir. 1983)........................................................................................ 11

Donovan v. Dialamerica Mktg., Inc.,
    757 F.2d 1376 (3d Cir. 1985).................................................................................. 11,14

Donovan v. Sureway Cleaners,
    656 F.2d 1368 (9th Cir. 1981) ...................................................................................... 11

Dyndul v. Dyndul,
    620 F.2d 409 (3d Cir. 1980).......................................................................................... 19

Gramm v. Bell Atlantic Management Pension Plan,
    983 F. Supp. 585 (D.N.J. 1997) ........................................................................... 16,22,24

Hawksbill Sea Turtle v. Federal Emergency Management Agency,
    126 F.3d 461 (3d Cir. 1997)......................................................................................... 19

Hein v. F.D.I.C.,
    88 F.3d 210 (3d Cir. 1996)........................................................................................... 16

Kuzinich v. County of Santa Clara,
    689 F.2d 1345 (9th Cir. 1982) ...................................................................................... 18

Martin v. Selker Bros. Inc.,
    949 F.2d 1286 (3d Cir. 1991)........................................................................................ 11

Massachusetts Mut. Life Ins. Co. v. Russell,
    473 U.S. 134 (1985).................................................................................................... 15

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986).............................................................................................. 10,12,22

Mertens v. Hewitt Assocs.,
    508 U.S. 248 (1993).............................................................................................. 16,22

Morris v. Hoffa,
    361 F.3d 177 (3d Cir. 2004).......................................................................................... 18

Neuman v. Pike,
    456 F. Supp. 1192 (S.D.N.Y. 1978)..................................................................... 18

Pearson v. Component Tech. Corp.,
    247 F.3d 471 (3d Cir. 2001)........................................................................24,26

Rutherford Food Corp. v. McComb,
    331 U.S. 722 (1947)....................................................................................... 11

Sandom v. Travelers Mortgage Services, Inc.,
    752 F. Supp. 1240 (D.N.J. 1990) ................................................................... 11

Solomon v. Klein,
    770 F.2d 352 (3d Cir. 1985)........................................................................... 22

U.S. Dep't of Labor v. Cole Enters., Inc.,
    62 F.3d 775 (6th Cir. 1995) ........................................................................... 11

U.S. v. Local 560 (I.B.T.),
    974 F.2d 315 (3rd Cir. 1992) ......................................................................... 18

Varity Corp. v. Howe,
    516 U.S. 489 (1996)..................................................................................16,22

## STATUTES AND RULES

29 U.S.C. § 203(d) ............................................................................................... 10

29 U.S.C. § 203(e)(1).............................................................................................10

29 U.S.C. § 1002(21)(A)(iii)...................................................................................22

29 U.S.C. § 1132(a)(2)...........................................................................................15

29 U.S.C. § 1132(a)(3)...........................................................................................15

29 U.S.C. § 2102(b)(1) ..........................................................................................26

29 U.S.C. § 2102(b)(2)(A)......................................................................................26

29 U.S.C. § 2104(a) ..............................................................................................25

20 C.F.R. § 639.3(2) .............................................................................................24

Fed. R. Civ. P. 56(e) .........................................................................................10,22

§12, Appendix R, Local Civil Rules for the U.S.D.C. for the District of New Jersey ..................9

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------------------- x

LAWRENCE SHEINBERG and GILES HAZEL,
on behalf of themselves and others
similarly situated,

               Plaintiffs,

        v.

ROBERT SORENSEN; DUROLITE
INTERNATIONAL, INC.; LITETRONICS
INTERNATIONAL, INC.,

           Defendants and
           Third-Party Plaintiffs,

        v.

FLEET CAPITAL CORPORATION,

           Third-Party Defendant.

-------------------------------------------------------------- x

Civil Action No. 00-6041(JLL)

### DEFENDANTS' MEMORANDUM OF LAW
### IN OPPOSITION TO PLAINTIFFS' SUMMARY JUDGMENT MOTION

      Defendants Robert Sorensen, Durolite International, Inc. and Litetronics International, Inc. submit this Memorandum of Law in opposition to plaintiffs' Summary Judgment Motion, as follows:

### I.

### PRELIMINARY STATEMENT

      Plaintiffs are former non-union employees of Duro-Test Corp. ("Duro-Test"), a defunct Chapter 7 debtor that formerly manufactured lighting products. Duro-Test closed its doors in February 2000, after its lender abruptly refused to advance funds under a revolving loan for the company's operations.

      Because plaintiffs cannot sue their employer, they commenced this action against defendant Durolite, which was Duro-Test's holding company; Litetronics, an affiliate of Duro-

Test; and Robert Sorensen, who resigned as Duro-Test's CEO six months before Duro-Test ceased business operations.

The only means by which plaintiffs can obtain any recovery is by proving that all of the defendants and Duro-Test constituted "one employer" under ERISA, the Fair Labor Standards Act and the federal WARN Act. However, every witness in every deposition that plaintiffs conducted provided testimony that warrants dismissal of all claims. Documentary evidence is similarly unavailing. Accordingly, plaintiffs present the Court with the bizarre spectacle of a party seeking summary disposition of the case while simultaneously in full retreat from the facts developed in the litigation.

Rather than present evidence developed in this action, plaintiffs repeatedly resort to a hearing in a preliminary injunction motion dating from March 2000 in <u>District Three, et al. v. Sorensen et al.</u>, C.A. No. 00-971 (DRD), (D.N.J. 2000). Duro-Test's unionized employees filed the <u>District Three</u> case on March 1, 2000 for, among other things, enforcement of a collective bargaining agreement (not present in this case) that required Duro-Test to pay three months of health benefits for union employees in the event of a plant closing. Plaintiffs in this action allege that they are entitled to the same benefits as the <u>District Three</u> plaintiffs -- but 3½ years after commencing this action, they have no evidence to present.

Nor may plaintiffs use the <u>District Three</u> preliminary injunction hearing for any other purpose. The <u>District Three</u> hearing was held on March 10, 2000, only nine days after the filing of the <u>District Three</u> complaint and without the benefit of any discovery. It was never a final disposition on the merits and it does not constitute a full and fair hearing concerning the facts in that action, or in this litigation. It is not binding as a matter of law.

With no facts to support their position, plaintiffs' summary judgment motion amounts to a polyglot of inaccuracies, overgeneralizations and wrong conclusions. It should be denied in all respects.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   Plaintiffs' Factual Presentation Is Inaccurate And Misleading

Plaintiffs' summary judgment motion consists of little more than their Memorandum of Law (Plaintiffs' "Brief").[1]   Plaintiff's Brief begins with a portrayal of the facts that is inaccurate, incomplete and, in many instances, not supported with citations to testimony or documents.[2]   Rather than provide the Court with the highly probative evidence concerning the operations of Duo-Test and Litetronics that was developed during the depositions that plaintiffs conducted, plaintiffs resort instead to overgeneralization.   Time and again, plaintiffs have resorted to general information that does not address the precise issues to be determined -- or they utilize shallow testimony from the hurried District Three injunction hearing.   Plaintiffs avoid the vastly more detailed facts and testimony gathered in this action.[3]

The end result of plaintiffs' efforts is a factual presentation that is inaccurate, not credible and at times misleading with respect to almost every major topic that plaintiffs attempt to portray.   For example,

    **1. There Was No "Merger."** Plaintiffs assert repeatedly that there was a merger between Litetronics and Duro-Test.   See Plaintiffs' Brief, pp. 5-6.   Plaintiffs rely solely upon a rather informal memorandum circulated among the Duro-

---

[1]   Plaintiffs served their Statement pursuant to Local Civil Rule 56.1 just 5 days before service of defendants' opposition papers -- and only after defendants served a motion to strike plaintiffs' summary judgment motion.   Plaintiffs' Rule 56.1 Statement did not cite any evidence, and is defective in its entirety.   In addition, Plaintiffs' Brief exceeded the page limit in Local Rule 7.1 by seven pages.

[2]   For a complete presentation of the facts, we respectfully direct the Court's attention to:   (a) Defendants' Rule 56.1 Statement; and (b) the Statement contained in our Memorandum of Law in Support of Defendants' Motion for Summary Judgment.

[3]   This is evident simply by examining plaintiffs' factual citations.   The factual presentation in Plaintiffs' Brief (pp. 5-16) contains citations to 137 pages from the District Three injunction hearing, which is approximately 300 pages, with 164 pages of testimony.   Meanwhile, plaintiffs cite to only 58 pages from the deposition testimony in this action, which totaled 1,979 pages.

3

Test work force in 1995, following the acquisition of Duro-Test.  <u>Id.</u>
Plaintiffs all but ignore the fact that Litetronics and Duro-Test remained
separate corporations as reflected in, among other things, their Loan
Agreement with Fleet Capital Corp. ("Fleet").[4]  Far worse, plaintiffs ignore
the substantial body of evidence developed in this litigation which proves
that, on every level, Duro-Test and Litetronics operated independently, with
separate executives; separate engineering and marketing departments;
separate products and customers; separate HR staffs; separate employee
manuals and rules in the work place; separate payrolls; separate health plans;
and separate banking relationships.  <u>See</u> Defendants' Rule 56.1 Statement, ¶¶
22-94.[5]   The separate operations of Duro-Test and Litetronics were
confirmed in the depositions that plaintiffs conducted -- but the facts are
missing from their Brief.

2.   **The "Lock Box" was for Customer Revenues Only.**  Plaintiffs incorrectly
assert that employee contributions for Duro-Test's health plan were
deposited into a "lock box" under the control of Fleet.  <u>See</u> Plaintiffs' Brief,
pp. 6-7.  This is at odds with the facts.  As the evidence developed in this
litigation demonstrates, the Loan Agreement with Fleet required revenues --
not contributions -- to be deposited into separate lock boxes for Litetronics
and Duro-Test.[6]  The deposition testimony in this action also confirmed that
the lock box contained only revenues from Duro-Test customers.   <u>See</u>
Sorensen Dep. (Plaintiffs' Appendix, Exh. B), pp. 80-81, 334; (<u>see</u> <u>also</u> Defs.

---

4   <u>See</u> Declaration of Gary A. Stahl, Esq., dated May 31, 2004 ("Stahl Decl."),
submitted in connection with defendants' summary judgment motion, Exh. Q.

5   Citations to Defendants' Statement of Material Undisputed Facts pursuant to Rule
56.1 are hereinafter referred to as "Defs. Fact ___.").

6   <u>See</u> Loan Agreement (Stahl Decl., Exh. Q), Section 6-2.5.

Facts, ¶¶ 15-18, 80.) In contrast, Duro-Test's expenditures for wages and for all other expenses, including payments to maintain the heath plan, were drawn from Duro-Test's borrowing base under its revolving loan with Fleet. Duro-Test's CFO was responsible for drawing funds and for allocating those amounts. See Loan Agreement (Stahl Decl., Exh. Q), § 1.1.1 and 1.1.2; Defs. Facts, ¶¶ 82-85.

3.    **There Was No Parity Between Plaintiffs and Their Unionized Counterparts.** Without bothering to cite any evidence at all, plaintiffs assert that, "historically," they were entitled to the same benefits that the <u>District Three</u> plaintiffs enjoyed under their collective bargaining agreement. <u>See</u> Plaintiffs' Brief, p. 8. Plaintiffs have ignored the fact that a movant is required to present admissible facts on a summary judgment motion. At their depositions, both of the individually named plaintiffs (whom plaintiffs identified as the only knowledgeable plaintiffs among the class) confirmed that their benefits were far different from Duro-Test's unionized employees, and that nobody in Duro-Test management ever made any representations that such benefits were identical. (Defs. Facts, ¶¶ 128-140, 230-277.)

4.    **Duro-Test and Litetronics Operated Separately.** In an attempt to portray all defendants as a single employer with Duro-Test, plaintiffs rely repeatedly on the overgeneralization that defendant Sorensen was the "chief decision maker" for Durolite, Litetronics and Duro-Test, and assert that Duro-Test and Litetronics operated under "the simple control of Sorensen." <u>See</u> Plaintiffs' Brief, pp. 9, 11. This ignores the facts. At the depositions that plaintiffs conducted, the evidence was that Sorensen ceded all decision-making with respect to Litetronics following the 1995 acquisition of Duro-Test. Litetronics and Duro-Test were operated separately and independently on every level -- administration, human resources, engineering, sales, payroll

and banking.   Moreover, within Duro-Test, Sorensen never exercised any discretionary authority concerning Duro-Test's health plan, the draws that Duro-Test made upon its revolving loan to pay wages and expenses, or Duro-Test's personnel decisions. (Defs. Facts, ¶¶ 46-47, 56, 65, 82-85.)

5.   **The Transfer of Business Benefited Duro-Test.**  Without regard to the facts, plaintiffs assert that Duro-Test was damaged when various lines of business were exchanged with Litetronics. See Plaintiffs' Brief, pp. 10-11. The facts concerning these transfers were developed, once again, in the depositions that plaintiffs conducted.  Contrary to plaintiffs' unsupported assertion, the transfers were negotiated with Duro-Test's Vice President of Sales, and approved by Litetronics' President. (Defs. Fact, ¶ 99.) Four lines of business were transferred between Litetronics and Duro-Test.   The transfers were made to take advantage of the fact that Duro-Test sold its products to end-users in the lighting market, while Litetronics' customers consisted of wholesalers and distributors.   Duro-Test transferred to Litetronics two lines of business that accounted for approximately $1 million in annual revenues. However, Duro-Test *received* two lines of business from Litetronics that generated $1.5 million in revenues per year. (Defs. Facts, ¶¶ 99-112.)

6.   **Plaintiffs' Assertion of "Siphoning" Is Fiction.** Plaintiffs repeatedly assert that defendants "siphoned" and "stripped" assets from Duro-Test.  See Plaintiffs' Brief, pp. 12-13. Plaintiffs again refuse to acknowledge the facts developed during the depositions that they conducted.  Those facts show that: (a) Litetronics purchased Duro-Test lamps at 14% over the market rate in order to reduce Duro-Test's overhead and operating expenses; and (b) Litetronics' purchases utilized excess manufacturing capacity at Duro-Test and never impeded the sale of Duro-Test products to any other customers at

higher margins. (Defs. Facts, ¶¶ 113-122.) In addition, Litetronics made cash advances to Duro-Test, even though it was never under any obligation to do so. Litetronics arranged for the sale of obsolete Duro-Test equipment and permitted Duro-Test sales personnel to sell Litetronics products; and Sorensen, with other individuals, contributed approximately $1.5 million to Duro-Test in order to keep the company operating during the Summer of 1999. (Defs. Facts, ¶¶ 95-97, 155-162.)

7. **The Sale of Litetronics Benefited Duro-Test.** Plaintiffs assert that Sorensen "hammered the final nail into Duro-Test's coffin" in connection with the sale of Litetronics in January 2000. See Plaintiffs' Brief, p. 13. This is at odds with the facts. World Lighting Investment Co., the purchaser of Litetronics, overpaid to acquire the company based on a pricing model: (a) which employed a higher multiple of Litetronics' EBITDA than that which would ordinarily be used; and (b) which was reviewed and approved by Durolite's Board of Directors (Sorensen did not vote) and by Fleet, which held a lien on Litetronics' assets. The purchase of Litetronics exposed Litetronics to considerably more debt than it had with Fleet. Sorensen became subject to a guaranty for Litetronics' new debt. Most important, the sale of Litetronics provided Duro-Test with $1.2 million, which eliminated an $800,000 overadvance by Fleet, and provided $400,000 to increase the funds that were available to Duro-Test under its revolving loan with Fleet. (Defs. Facts, ¶¶ 163-192.) In addition, plaintiffs ignore the fact that the sale of Litetronics was the first part of a two-phase process to generate availability of working capital for *Duro-Test*, while its lender provided

additional time for a sale or refinancing of Duro-Test. (Defs. Facts, ¶¶ 193-204.)[7]

8. **Plaintiffs' Description of Duro-Test's Closure Is Not Accurate.** Plaintiffs attempt to describe the closure of Duro-Test by asserting that the company manufactured lamps only for Litetronics. Plaintiffs also claim that there was a "fly-by-night" shipment of product to Litetronics one week before Duro-Test closed its doors. See Plaintiffs' Brief, pp. 15-16. The fact is that Litetronics' purchases amounted to only one-sixth of Duro-Test's production of incandescent bulbs (one of several Duro-Test products); Litetronics paid Duro-Test 14% more than Litetronics would have paid to other vendors; and Litetronics' purchases utilized excess, unused production capacity at Duro-Test. (Defs. Facts, ¶¶ 113-122.) Plaintiffs make no allegation that Litetronics failed to pay for any products that it purchased from Duro-Test. Nor do plaintiffs make any mention of the real cause behind Duro-Test's closure -- the abrupt failure of its lender to advance funds under the revolving loan while Duro-Test was intensively pursuing a sale and refinancing of the company. (Defs. Facts, ¶¶ 198-229.)

Plaintiffs' portrayal of the facts is unreliable. Plaintiffs' inaccurate rendition of the facts, in and of itself, warrants denial of their motion for summary judgment.

**B.** **Procedural Background Of This Motion**

This action was filed in December 2000. Plaintiffs and defendants served their respective motions for summary judgment approximately 3½ years later, on June 1, 2004.

---

[7]  Although the transaction produced $1.2 million for Duro-Test, plaintiffs assert -- without any factual support -- that it should have been Sorensen's duty to channel these funds to the health plan and to employee wages. See Plaintiffs' Brief, p. 14. The facts, which plaintiffs evade, are that Sorensen resigned as Duro-Test's CEO months earlier, and that Duro-Test's CFO, not Sorensen, was in charge of drawing funds for this purpose from Duro-Test's revolving loan and allocating such funds among Duro-Test's creditors. See Defendants' Rule 56.1 Statement, ¶¶ 82-85.

Plaintiffs' lead counsel is Robert B. Bodzin, Esq., who has litigated this case since its inception. The firm that represented plaintiffs when the action was filed maintained offices in Philadelphia and New Jersey; and so does the law firm that currently represents plaintiffs.

Despite more than ample time to become familiar with the Court's Local Rules, plaintiffs served their summary judgment motion without a Local Rule 56.1 Statement of Undisputed Facts.[8]   Defendants inquired as to the whereabouts of the plaintiffs' Rule 56.1 Statement on the same day that the plaintiffs served their motion. (Exh. A hereto)[9]

Plaintiffs failed to respond to the inquiry. Plaintiffs also failed, for more than two weeks, to prepare a Local Rule 56.1 Statement. Moreover, plaintiffs received defendants' summary judgment motion and defendants' Rule 56.1 Statement on June 1, 2004 -- which means that plaintiffs certainly were aware that such a pleading was required.

Defendants served a motion to strike plaintiffs' summary judgment motion on June 14, 2004, and plaintiffs received that motion the following day. On June 17, 2004 -- only 5 days before the parties were scheduled to serve opposition papers -- plaintiffs served a Rule 56.1 Statement via telecopier.[10]   Apparently, plaintiffs would not prepare the materials that are required on a motion for summary judgment until defendants served their motion to strike.

Plaintiffs' Rule 56.1 Statement consists of a series of 86 statements, almost all of which are one sentence long. Plaintiffs' Rule 56.1 Statement does not contain a single

---

[8]   Mr. Bodzin is undoubtedly familiar with the requirement of a Rule 56 Statement, and the effect of such a Statement. See Brookridge Funding Corp. v. Northwestern Human Services, 175 F. Supp. 2d 355, 357, 358 n. 3 (D. Conn. 2001). See also Defendants' motion to strike plaintiffs' summary judgment motion filed on June 15, 2004.

[9]   Exhibit A to this Memorandum of Law consist of plaintiffs' e-mail transmission of their motion and defendants' response, which stated: "Bob, Where is plaintiffs' Rule 56.1 Statement? The way I read Local Civil Rule 56.1, you can't make a motion for summary judgment without one." These materials form part of the record in defendants' motion to strike plaintiffs' summary judgment motion, filed on June 15, 2004.

[10]   The service of plaintiffs' Rule 56.1 Statement with just 5 days remaining before the service of a response violated Section 12 of "Lawyers' Duties to Other Counsel," as set forth in Appendix R to the Court's Local Rules.

reference to any testimony, documents or other evidence to support any of their assertions. Plaintiffs' pleading is defective and woefully inadequate.

Plaintiffs also failed to provide defendants with all of the materials on which they base their motion for summary judgment. By letter dated June 16, 2004 (attached as Exh. B), defendants advised plaintiffs that none of their references to testimony or documentation in the District Three proceeding could be found within the materials in plaintiffs' summary judgment motion. Plaintiffs have simply ignored this. At the time defendants served this Memorandum of Law, plaintiffs have yet to provide defendants with these materials.

## III.

## ARGUMENT AND AUTHORITIES

### A.   Plaintiffs Have Not Met Their Summary Judgment Burden On Their Fair Labor Standards Act Claims

Plaintiffs have failed to meet their summary judgment burden on their FLSA claims because they have not submitted any facts to establish that there was an employer-employee relationship with any defendant. On summary judgment, plaintiffs must do more than rely on conclusory allegations and unsupported statements to prove the existence of an employer-employee relationship.[11] They must cite "concrete evidence from which a reasonable juror could return a verdict in [their] favor . . . ."[12]

The FLSA defines an employee as "any individual employed by an employer."[13] It defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ."[14] Although not cited in Plaintiffs' Brief, the Third Circuit Court

---

[11]  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(e).

[12]  Matsushita, 475 U.S. at 586-87 (1986); Anderson, 477 U.S. at 256.

[13]  29 U.S.C. § 203(e)(1).

[14]  Id. at § 203(d).

of Appeals established the following six-factor test to assist in determining whether an employment relationship existed:

> 1) the alleged employer's right to control the performance of the work; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment required for his task; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.[15]

The presence or absence of any one factor of this test is not dispositive. Courts must also examine the "circumstances of the whole activity and should consider whether, as a matter of economic reality, the individuals 'are dependent upon the business to which they render service.'"[16] In the end, "the employment status of the [plaintiffs] is a legal conclusion."[17]

For a corporate officer to incur to FLSA liability for unpaid wages, the officer must have "operational control" over the subject employees.[18] To make this determination, courts in this Circuit examine the totality of the circumstances, including whether the corporate officer "actually exercised day to day control over the affairs of the corporate defendant, including approving promotions and raises, hiring and discharging employees, and establishing other terms and conditions of employment."[19] The corporate officer must also be *personally responsible* for the decision that violated the FLSA, and have power over rates of pay, pay schedules and payroll, for individual liability to attach.[20]

---

[15] Dialamerica Marketing, 757 F.2d at 1382 (adopting test first promulgated by the Supreme Court in Rutherford Food Corp. v. McComb, 331 U.S. 722 (1947) and refined by the Ninth Circuit in Donovan v. Sureway Cleaners, 656 F.2d 1368 (9th Cir. 1981)).

[16] Dialamerica Marketing, 757 F.2d at 1382 (citations omitted).

[17] Martin v. Selker Bros. Inc., 949 F.2d 1286, 1292 (3d Cir. 1991).

[18] Dole v. Haulway, Inc., 723 F. Supp. 274, 286-87 (D.N.J. 1989) (citing Donovan v. Agnew, 712 F. 2d 1509, 1511 (1st Cir. 1983)).

[19] Haulway, 723 F. Supp. at 287.

[20] See Sandom v. Travelers Mortgage Services, Inc., 752 F. Supp. 1240, 1251 (D.N.J. 1990); see also Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 678-79 (1st Cir. 1998); U.S. Dep't of Labor v. Cole Enters., Inc., 62 F.3d 775, 778 (6th Cir. 1995).

The authorities cited by plaintiffs warrant denial of their motion and support the conclusion that defendants were not plaintiffs' employer for FLSA purposes. Plaintiffs cite <u>Dole v. Haulway, Inc</u>.[21] to support their FLSA claims. Plaintiffs assert:

> In <u>Dole</u>, the corporation's President and sole shareholder . . . in addition to holding corporate authority, <u>actually exercised day to day control over the affairs of the corporate Defendant including: hiring and discharging employees, approving promotions and raises and establishing other terms and conditions of employment.</u> Accordingly, [he] was considered an "Employer" under FLSA.[22]

Under the holding of <u>Dole</u>, and Third Circuit case law, there is no basis for an FLSA claim against Sorensen because plaintiffs have failed to provide any evidence that he exercised control over plaintiffs' terms and conditions of employment sufficient to create any personal liability. Sorensen resigned as an officer of Duro-Test in August 1999, when Richard Crossland was appointed Duro-Test's new CEO. Sorensen removed himself from Duro-Test's corporate headquarters in New Jersey and had no involvement, in any capacity, in the day-to-day management of Duro-Test's affairs. (Defs. Facts, ¶¶ 99, 146-51.) Plaintiffs' Rule 56.1 Statement fails to cite any authority for its factual contentions that Sorensen exercised control over plaintiffs sufficient to create liability. Plaintiffs must offer "concrete evidence from which a reasonable juror could return a verdict in [their] favor . . ." to prevail on their motion for summary judgment.[23] Plaintiffs' unsupported assertions are insufficient for them to meet their summary judgment burden.

Likewise, plaintiffs have failed to proffer any evidence, in their improper Rule 56.1 Statement or elsewhere, that places Sorensen within the scope of an "employer" under the FLSA. No plaintiff with knowledge has testified that Sorensen controlled the manner in which he performed any work. Plaintiffs have testified only in the most general terms that Sorensen

---

[21]  723 F. Supp. 274 (D.N.J. 1989).

[22]  Plaintiffs' Brief, p. 30 (emphasis added).

[23]  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); <u>Anderson</u>, 477 U.S. at 256.

was the highest-ranking individual in the organization. The evidence is uncontroverted that Sorensen did not exercise control over any matters relating to payroll, or the payment of any amounts to Horizon to administer the Duro-Test health insurance plan. Sorensen was not an officer of Duro-Test after August 1999, and after that time he had no authority as to Duro-Test's payroll or its health insurance plan. (Defs. Facts, ¶¶ 34, 55-56, 63-66, 75-76, 85, 131, 146-51, 230-77.)

Sorensen never exercised any control over Duro-Test's payroll and human resources functions, and never attempted to do so. Payroll and health insurance matters were handled exclusively by Duro-Test's HR Department, which reported to the Duro-Test CFO or controller -- but not to Sorensen. Sorensen exercised no control over payroll or health insurance matters, either before August 1999 or after. (Defs. Facts, ¶¶ 43-76.)

Plaintiffs also fail to provide any evidence that Sorensen was responsible for making any decision that violated the FLSA. Sorensen was not CEO of Duro-Test when it ceased operating on February 18, 2000. Day-to-day operations were managed by Richard Crossland beginning in August 1999. Duro-Test's operations came to an abrupt halt when Fleet refused to advance funds under the revolving loan just prior to the February 18 payroll. Duro-Test had paid every payroll until that time. Duro-Test's health insurance plan was in effect when Duro-Test ceased operations. Fleet's decision not to advance funds caused the shut-down of Duro-Test's operations. Sorensen made no decision to close the company; he made no decision to deprive any plaintiff of wages; and he made no decision to deprive any plaintiff of health insurance benefits. (Defs. Facts, ¶¶ 72, 205-23, 146-51.) Accordingly, because plaintiffs failed to provide any evidence from which a rational trier of fact could conclude that defendants are liable for their FLSA claims, plaintiffs' summary judgment motion for their FLSA claims against Sorensen must be denied.

Likewise, plaintiffs have failed to satisfy their summary judgment burden to establish with "concrete evidence" that defendants Durolite and Litetronics were plaintiffs' employers under the FLSA. Plaintiffs' Rule 56.1 Statement supplies nothing other than

13

conclusory, unsupported statements alleging that Durolite and Litetronics were plaintiffs' FLSA employers. In their Brief, plaintiffs fail to even cite the applicable factors established by the Third Circuit to determine employer status under the FLSA. Applying properly supported facts in Defendants' Rule 56.1 Statement to the appropriate Third Circuit analysis for FLSA employer status, it is apparent that plaintiffs' FLSA claim against the corporate defendants fails as a matter of law as well.

The Third Circuit's <u>Dialamerica Marketing</u> factors, together with a test of the economic realities, establishes that the FLSA's definition of an "employer" cannot be warped in the manner that plaintiffs propose to find the corporate defendants liable under the FLSA. Litetronics and Duro-Test had separate sales and marketing staffs, engineering staffs, products and customers, human resources departments, payrolls, banking relationships and separate procedures and policies in the workplace. Plaintiffs rendered services only to Duro-Test. No plaintiffs worked for Litetronics or were on Litetronics' payroll. There is no evidence that Litetronics ever controlled plaintiffs' work or the manner in which it was performed. No knowledgeable plaintiff has claimed that he worked for Litetronics or was paid by Litetronics. (Defs. Facts, ¶¶ 22-33, 43-57, 77-94, 230-33, 237, 262-65.)

The same holds true for Durolite. Plaintiffs have failed to provide any evidence that Durolite ever controlled the manner or method in which any of the plaintiffs performed their work for Duro-Test. Plaintiffs have admitted that they were never paid by Durolite. No knowledgeable plaintiff has provided evidence concerning any work performed for Durolite. None of their work was ever an integral part of Durolite's business; nor could it ever have been. Durolite had no employees, conducted no business of its own and had no products of its own. (Defs. Facts, ¶¶ 10, 22-94, 235, 237, 253-54, 263-64.) Accordingly, plaintiffs' summary judgment motion on their FLSA claims against Durolite and Litetronics should be denied and their FLSA claims dismissed in their entirety.

14

**B.    Plaintiffs Have Fallen Far Short Of Their
        Summary Judgment Burden On Their ERISA Claims**

       **1.    Plaintiffs Are Precluded From the Relief They Seek**

Plaintiffs' Motion for Summary Judgment on their ERISA claims should be denied and their claims dismissed because they fail as a matter of law. As a preliminary matter, plaintiffs have no standing for the relief they seek. Plaintiffs allege in Paragraph 40 of their Complaint that "[b]y failing to make premium payments and maintain health insurance coverage, the Employer violated the terms of the Plan and Section 502 of ERISA. . . ." Although plaintiffs do not identify the particular subsection of ERISA Section 502 under which they are proceeding, either in their Complaint or their Summary Judgment Brief, a claim for breach of fiduciary duty may be brought under either: (i) 29 U.S.C. § 1132(a)(2) ("Section 502(a)(2)"); or, (ii) 29 U.S.C. § 1132(a)(3) ("Section 502(a)(3)"). Plaintiffs' claims fail under either subsection.

Section 502(a)(2) permits plan participants to obtain "appropriate relief" to redress violations of the fiduciary provisions in Title I of ERISA. See 29 U.S.C. § 1132(a). However, the Supreme Court has ruled that Section 502(a)(2) authorizes relief solely for the benefit of the subject ERISA plan.[24] Section 502(c) does not authorize remedies for individual plan participants.[25] Because plaintiffs are not suing on behalf of the plan, but rather, for individual relief, they do not have standing under Section 502(a)(2).

Moreover, to the extent plaintiffs' Complaint is a claim for health insurance premium payments or for failure to provide health insurance benefits, such claims fail as a matter of law. It is well settled that "ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits."[26] Furthermore, "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify,

---

[24]   See Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134 (1985).

[25]   Id.

[26]   Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995).

or terminate welfare plans."[27]   Consequently, plaintiffs may not premise ERISA claims against defendants upon any alleged failure of *Duro-Test* to make health insurance premium payments or to provide health insurance.

Likewise, plaintiffs are unable to obtain the relief they seek under Section 502(a)(3).  Section 502(a)(3) permits plan participants to enjoin a violation of Title I of ERISA or the terms of a plan, or to obtain appropriate equitable relief.  See 29 U.S.C. § 1132(a)(3).  The Supreme Court has held that participants may seek only equitable relief, not money damages as plaintiffs seek here.[28]   Because plaintiffs seek money damages, they are precluded from proceeding under Section 502(a)(3).

To the extent plaintiffs assert that the money damages they seek are equitable in nature, such argument is without merit.  Section 502(a)(3) "authorizes a court to award only traditional forms of equitable relief, such as an injunction or an order providing for restitution of ill-gotten gains from a breach of fiduciary duty."[29]   The meaning of equitable relief, particularly in the context of ERISA, "does not include monetary damages, but rather refers to remedies traditionally viewed as equitable, such as injunction or restitution."[30]   The Supreme Court has ruled that "compensatory and punitive damages are not 'equitable relief' within the meaning of [Section 502(a)(3)]."[31]   Consequently, plaintiffs cannot meet their summary judgment burden in establishing an entitlement to the relief they seek.  Their summary judgment motion on their ERISA claims should be denied and their ERISA claims dismissed in their entirety.

---

[27]  Id. (citing Adams v. Avondale Indus., Inc., 905 F.2d 943, 947 (6th Cir. 1990) ("[A] company does not act in a fiduciary capacity when deciding to amend or terminate a welfare benefits plan").

[28]  See Mertens v. Hewitt Assocs., 508 U.S. 248, 255-60 (1993); see also Hein v. F.D.I.C., 88 F.3d 210, 224 (3d Cir. 1996), Gramm v. Bell Atlantic Management Pension Plan, 983 F. Supp. 585, 593 (D.N.J. 1997).

[29]  Gramm, 983 F. Supp. at 593 (citing Mertens, 508 U.S. at 256).

[30]  Hein, 88 F.3d at 224 (citing Mertens, 508 U.S. at 256-63).

[31]  Varity Corp. v. Howe, 516 U.S. 489, 510 (1996).

2.   **Plaintiffs' Attempt To Impose "Fiduciary" Status Upon
Sorensen By Relying on The District Three Litigation Is Improper**

Plaintiffs assert that this Court is precluded from determining Sorensen's status as an

ERISA fiduciary because it was decided in a preliminary injunction hearing in another case.  In

District Three, et al v. Sorensen et al., C.A. No. 00-971 (DRD), (D.N.J. 2000) (hereinafter

"District Three"), the plaintiffs were Duro-Test's former unionized employees.  The District

Three case was filed on March 1, 2000 to enforce certain provisions of a collective bargaining

agreement (which is not present in this case) that obligated Duro-Test to maintain health

insurance for its unionized employees for three months following a plant closing.  On March 1,

2000, at the same time they filed their complaint, the District Three plaintiffs moved for a

preliminary injunction seeking to enjoin defendants from failing to pay sufficient monies to

maintain their health insurance coverage pursuant to the collective bargaining agreement.  On

March 10, 2000, the Court held a preliminary injunction hearing, without the benefit of any

discovery.  The Court issued a preliminary injunction on March 16.

The District Three findings have no preclusive effect here.  The Third Circuit has

ruled that:

> "Issue preclusion...proscribes relitigation when the identical issue already has
> been fully litigated. [It] may be invoked when: (1) the identical issue was decided
> in a prior adjudication; (2) there was a final judgment on the merits; (3) the party
> against whom the bar is asserted was a party or in privity with a party to the prior
> adjudication; and (4) the party against whom the bar is asserted had a full and fair
> opportunity to litigate the issue in question."[32]

Plaintiffs fail to satisfy the elements of issue preclusion.  The District Three hearing involved a

preliminary injunction just nine days after the case was filed.  The hearing was not on the merits,

and the parties had no full or fair opportunity to develop the facts and issues presented in this

case -- including the issue of Sorensen's alleged fiduciary status under ERISA.

---

[32] Board of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc. Pension
Fund v. Centra, 983 F.2d 495, 505 (3d Cir. 1992) (citations omitted).

The Third Circuit has repeatedly ruled that a preliminary injunction is merely a *prediction* about the merits of a case, not a determination on the merits.[33]   Preliminary injunction rulings are not entitled to "law-of-the-case" status in the same litigation.  *A fortiori*, preliminary injunction findings cannot have preclusive effect in an entirely different action.[34] Judge Debevoise did not make any final rulings in the District Three action.  Even with respect to "fiduciary" status under ERISA, the Court's rulings were tentative.  Indeed, Judge Debevoise concluded "plaintiffs are *likely to prevail* against Sorensen and Litetronics *on the merits*."[35]  The District Three litigation never proceeded to the discovery phase, and never reached any determination on the merits.  Thus, plaintiffs may not assert that the District Three preliminary injunction hearing is preclusive with respect to Sorensen's alleged status as a fiduciary.

Plaintiffs have not demonstrated that defendants had a "full and fair opportunity" to litigate ERISA-related issues or other matters.  Plaintiffs merely assert that the Court "took testimony from both sides and all witnesses were subject to cross-examination."  Plaintiffs' Brief, p. 20.  Under Plaintiffs' view, if each side called only one witness who was to be cross-examined in a hasty preliminary injunction proceeding, then the issue would be fully litigated. Findings made during preliminary injunction proceedings are rarely given preclusive effect.[36] Preclusion arises only infrequently, where the "circumstances make it likely that the findings are

---

[33]  U.S. v. Local 560 (I.B.T.), 974 F.2d 315, 330 (3rd Cir. 1992); Morris v. Hoffa, 361 F.3d 177, 189 (3d Cir. 2004); Council of Alt. Political Parties v. Hooks, 179 F.3d 64, 70 (3d Cir. 1999).

[34]  Council of Alt. Political Parties v. Hooks, 179 F.3d 64, 70 (3d Cir. 1999) ("A court's preliminary ruling neither constitutes nor substitutes for an actual finding that the movant has succeeded on the merits and is entitled to permanent relief.")

[35]  Debevoise Op. at p. 24.

[36]  See Kuzinich v. County of Santa Clara, 689 F.2d 1345, 1350-51 (9th Cir. 1982) ("issues litigated in a preliminary injunction action are not res judicata and do not form a basis for collateral estoppel"); Neuman v. Pike, 456 F. Supp. 1192, 1205 (S.D.N.Y. 1978), rev'd on other grounds, 591 F.2d 191 (2d Cir. 1979) )grant of preliminary relief "by its very nature...is not a final judgment" and has "no res judicata or collateral estoppel effect" in subsequent action).

accurate and reliable"[37] and "'sufficiently firm' to persuade the court that there is no compelling reason for permitting them to be litigated again."[38]   Furthermore, fairness dictates against the use of offensive collateral estoppel where, as here, the defendants did not have the discovery tools available in the prior proceeding that they do in the current litigation.[39]   Allowing this offensive use of collateral estoppel in this action is improper and fundamentally unfair to defendants. There was no opportunity in the District Three action to engage in any discovery, or to gather relevant documentary evidence, in the short, nine-day period between the filing of the action and the evidentiary hearing. As the record shows, the difference in the amount and type of evidence that has been gathered in this case compared to the District Three litigation is extraordinary.

The District Three record consisted of a handful of documents and less than 200 pages of testimony, taken nine days after the action was filed. This action, in contract, involved class certification discovery; initial disclosures and interrogatory responses; production of 7,036 pages of materials by defendants and over 21,000 pages by third-party defendant Fleet Capital Corp. ("Fleet"); and 1,979 pages of deposition testimony. This case -- and not a hastily prepared injunction hearing -- is where pertinent issues were developed.

The District Three ruling itself demonstrates that it has no preclusive effect here, especially where Sorensen's "ERISA fiduciary" status is concerned. In the District Three ruling, Judge Debevoise wrote that corporate officers are not ERISA fiduciaries unless they have "individual discretionary control as to the plan administration." (27a). Nevertheless, the District

---

[37]  Id. quoting Commodity Futures Trading Comm'n v. Bd. of Trade, 701 F.2d 653, 657 (7th Cir. 1983).

[38]  Hawksbill Sea Turtle v. Federal Emergency Management Agency, 126 F.3d 461, 474 n.11 (3d Cir. 1997) citing Dyndul v. Dyndul, 620 F.2d 409, 411-12 (3d Cir. 1980).

[39]  Burlington N. R.R. Co. v. Huyndai Merch. Marine Co., 63 F.3d 1227, 1232 (3d Cir. 1995) quoting Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 330 (1971).

Three court did not make any factual finding concerning any discretionary authority that Sorensen supposedly exercised. The District Three court stated:

> (a)    The plan apparently had no separate structure within the Durolite, Duro-Test, Litetronics organization." (29a). But this is not the case. The facts developed in this litigation show that, at all times, Duro-Test had its own, separate health insurance plan, administered by its own HR personnel. (Defs. Facts, ¶¶ 63,65.)

> (b)    "It does not appear that anyone other than Sorensen exercised discretionary control over the plan management, assets or administration." (29a). In contrast, the facts developed in this litigation show that Sorensen never exercised discretionary authority over Duro-Test's plan. The plan was administered by Duro-Test's HR manager and his staff of six co-workers. Duro-Test's HR manager received invoices for plan maintenance and administration; forwarded the invoices to Duro-Test's CFO, to whom he reported; and it was Duro-Test's CFO who scheduled the invoices for payment and then drew appropriate funds from Duro-Test's revolving loan from Fleet. Sorensen was never a part of this process. (Defs. Facts, ¶¶ 63, 84-85.)

> (c)    The District Three court wrote that health plan contributions from Duro-Test employees were placed in a "lock-box" under Fleet's control. (29a-30a). This is contrary to fact. Separate lock boxes for Duro-Test and Litetronics were established under a certain Loan Agreement between Fleet, Durolite, Duro-Test, Litetronics and various affiliates. The Loan Agreement was never introduced before the District Three court. The Loan Agreement specified that the separate lock boxes were for "payments and remittances" received by Duro-Test and Litetronics -- not employee contributions. Moreover, the evidence developed in this action shows that only revenues from Duro-Test customers -- not employee contributions -- were deposited into the lock box. (Defs. Facts, ¶¶ 12-18; see also Sorensen Dep. (Stahl Decl., Exh. E) at 334.)

The inaccuracies in the District Three ruling are consistent with a hurried hearing that proceeded without an adequate opportunity to develop the corporate structure and independent workings of Duro-Test and Litetronics; the manner in which Duro-Test administered its finances; and Sorensen's role. The facts developed in this action over an extended period of time demonstrate that the earlier injunction proceeding carries no weight here, and that plaintiffs have failed to establish, for purposes of summary judgment, that Sorensen was an ERISA "fiduciary."

This case is very similar to <u>Don King Productions, Inc. v. Douglas</u>.[40]  In <u>Don King Productions</u>, a federal court in Nevada granted plaintiffs a preliminary injunction following a hearing held just seven days after service of an injunction motion.  In the subsequent proceedings on the merits in the Southern District of New York, plaintiffs argued that the choice of law determination in the Nevada proceedings precluded re-litigation of the matter at the summary judgment stage.  In refusing to give preclusive effect to the Nevada determination, the Court ruled the conditions necessary for giving preclusive effect, i.e. findings made after extensive hearings and briefings and a full opportunity to present all crucial evidence and witnesses, were not present.[41]

The <u>District Three</u> litigation likewise lacks the necessary conditions.  Less than 200 pages of testimony in a proceeding that results in avowedly tentative determinations are not sufficiently "firm" in matters as complicated as corporate structure, control and operational management.  Accordingly, the <u>District Three</u> determination is not entitled to any preclusive effect in this action.

### 3.    Plaintiffs' Have Not Met Their Summary Judgment Burden To Establish That Defendants Are ERISA Fiduciaries

Even assuming, without conceding, that plaintiffs have proffered sufficient evidence to demonstrate standing under Section 502(a)(2), or that they seek solely equitable relief under Section 502(a)(3), their summary judgment motion on their ERISA claims fails because they have submitted absolutely no evidence that defendants are ERISA fiduciaries.  On summary judgment, plaintiffs must do more than rely on conclusory allegations and unsupported

---

[40]   742 F. Supp. 741 (S.D.N.Y. 1990).

[41]   <u>Don King Prods. Inc.</u>, 742 F. Supp. at 754.

statements of fact to prove the defendants were ERISA fiduciaries.[42]   They must cite "concrete evidence from which a reasonable juror could return a verdict in [their] favor . . . ."[43]

"ERISA defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan."[44]  Plaintiffs concede on page 22 of their Brief that under ERISA, "a person 'is a fiduciary with respect to a plan' only 'to the extent' that 'he has any discretionary authority or discretionary responsibility in the administration of such plan.'"[45] Furthermore, "[i]n determining who is a fiduciary under ERISA, courts consider whether a party has exercised discretionary authority or control over a plan's management, assets or administration."[46]  In enacting ERISA, "Congress did not intend to expose corporate officers to personal liability for violation of [ERISA]."[47]  In addition, to the extent plaintiffs assert that Durolite or Litetronics was their employer for purposes of FLSA liability, "employers are not subject to ERISA's fiduciary duties."[48]

In support of their proposition that defendants were ERISA fiduciaries subject to liability, plaintiffs rely on Bannistor v. Ullman,[49] a Fifth Circuit case.  Plaintiffs' reliance on Bannistor is misplaced and they have misstated its holding.

The Fifth Circuit's holding in Bannistor is consistent with the requirement that for liability to attach, a party must have had discretionary control over plan assets.[50]  Plaintiffs assert

---

[42]  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c).

[43]  Matsushita, 475 U.S. at 586-87 (1986); Anderson, 477 U.S. at 256.

[44]  Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. and Research Found., 334 F.3d 365, 384 (3d Cir. 2003) (quoting Mertens, 508 U.S. at 262).

[45]  Burstein, 334 F.3d at 384 (quoting Varity Corp, 516 U.S. at 527 (quoting 29 U.S.C. § 1002(21)(A)(iii)); see also Confer v. Custom Eng'g Co., 952 F.2d 34, 36 (3d Cir. 1991).

[46]  Confer, 952 F.2d at 36.

[47]  Solomon v. Klein, 770 F.2d 352 (3d Cir. 1985).

[48]  Gramm, 983 F. Supp. at 593.

[49]  287 F.3d 394 (5th Cir. 2002).

[50]  See Bannistor, 287 F.3d at 401.

22

that in <u>Bannistor</u> the Fifth Circuit held the defendant corporations liable under ERISA for "negotiating, implementing, and operating a 'lockbox' financing arrangement. . . ."[51]   This is inaccurate.   The fact that the <u>Bannistor</u> defendants negotiated, implemented and operated a lockbox financing arrangement was not the basis upon which the Fifth Circuit found fiduciary status.   The Fifth Circuit expressly ruled that "the 'lockbox' financing arrangement was not in and of itself <u>per se</u> violative of ERISA."[52]   The Fifth Circuit found fiduciary status because the <u>Bannistor</u> defendants controlled plan assets by commingling employee withdrawals, meant for the ERISA plans, in the lockbox.   In this case, <u>only accounts receivable went into the lockbox, not employee withdrawals.</u> (Defs. Facts, ¶¶ 15, 16, 18; <u>see also</u> Sorensen Dep. at 334).   Because the lockbox at issue here did not commingle employee withdrawals with accounts receivable, defendants did not exercise any control whatsoever over plan assets as a result of their financing arrangement.   The <u>Bannistor</u> holding does not support plaintiffs' position, rather, it supports defendants' argument that they are not ERISA fiduciaries.

Plaintiffs provide no evidence from which a rational trier of fact could conclude that Sorensen was an ERISA fiduciary.   Sorensen never exercised control over health care funds of any Duro-Test employees and never used or possessed such funds.   Sorensen was not the administrator of the plan; all of the evidence shows that Horizon was the entity that administered benefits for Duro-Test's employees.   Sorensen did not control or exercise discretionary responsibility with respect to Duro-Test's plan, and neither did any other defendant.   The evidence indicates, uniformly, that managing the plan was in the hands of the HR Department, the HR Manager and, ultimately, Duro-Test's CFO.   The CFO determined the amount of funds to draw from Duro-Test's revolving loan; allocating funds between payroll and operating expenses; and payments to Horizon to cover the employees' claims.   Sorensen had no involvement in these matters.   (Defs. Facts, ¶¶ 43-69, 75-76, 84-85.)

---

[51]   <u>See</u> Plaintiffs' Brief, p. 25.

[52]   <u>Id.</u> at 402, n. 2.

Likewise, plaintiffs provide absolutely no evidence to establish that either Durolite or Litetronics had any discretionary authority or discretionary responsibility in the administration of plaintiffs' health plan. Neither Durolite nor Litetronics ever possessed or controlled assets relating to the administration of Duro-Test's plan or the payment of health-related benefits to Duro-Test employees. Furthermore, to the extent that plaintiffs argue Durolite or Litetronics employed them, "employers are not subject to ERISA's fiduciary duties. . . ."[53] Consequently, because plaintiffs proffer no concrete evidence that Durolite or Litetronics were ERISA fiduciaries, their summary judgment motion should be denied and their ERISA claims dismissed in their entirety.

## C.   Plaintiffs' WARN Act Claim Fail Because Plaintiffs Have No Evidence That Defendants Are WARN Act Employers

Plaintiffs have utterly failed to meet their Rule 56 burden to demonstrate WARN Act liability for any of the defendants. Indeed, the only knowledgeable members of the plaintiff class have testified that their only employer was Duro-Test. See Defendants' Rule 56.1 Statement ¶¶ 231, 237, 263.

Plaintiffs assert that Sorensen, Durolite and Litetronics constitute a "single employer" jointly with Duro-Test. They have failed to satisfy the legal standards, applicable to joint employees, and failed to submit any evidence. In making such a determination, the Court must consider the following factors, with no single factor being dispositive: (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) dependency of operations. 20 C.F.R. § 639.3(2). Factor (iii), which is de facto exercise of control, requires that the parent corporation exercise direct control over the particular policy or action at issue before employer status will be found.[54]

---

[53]   Gramm, 983 F. Supp. at 593.

[54]   Pearson v. Component Tech. Corp. 247 F.3d 471, 490 (3d Cir. 2001).

Plaintiffs' summary judgment motion on their WARN Act claims is without merit. As a matter of law, an individual, such as Sorensen, cannot be a WARN Act employer. The WARN Act defines an employer as "any 'business enterprise' that employs 100 or more employees." 29 U.S.C. § 2104(a). Nevertheless, plaintiffs assert -- without providing any evidence -- that "it is clear from the record that the activities of the individual Defendant Sorensen and the corporate defendants were inextricably intertwined; so much so in fact, that they were virtually indistinguishable from each other." Plaintiffs' Brief, p. 33. No provision in the WARN Act expressly or implicitly extends liability to officers and directors of an enterprise, and plaintiffs have not cited any authority holding otherwise. On a factual basis, plaintiffs have provided nothing to fulfill their summary judgment burden with respect to any alleged liability of Sorensen.

Litetronics is not a joint WARN Act employer because it was not under common ownership or control with Duro-Test. At the time of Duro-Test's closing, World Lighting owned Litetronics, and had owned it for nearly a month. Even prior to the sale of Litetronics, the only commonality between the two corporations was the fact that one individual, Sorensen, sat on both Boards of Directors. Plaintiffs are unable to provide any evidence to meet any other factors set forth above. Litetronics was not integrated with Duro-Test on any level, and there was no dependency of operations between them. The undisputed evidence establishes that no personnel from Litetronics ever performed any services or any role in the day-to-day management of Duro-Test's business. (Defs. Fact, ¶ 25.) No officer, director or manager of Litetronics ever worked for Duro-Test. (Id.) They each had separate engineering, HR, sales and customer service departments and separate bank accounts and separate production schedules. (Defs. Facts, ¶¶ 22, 27, 28.) The Duro-Test HR Department was never utilized in connection with any of Litetronics' business activities. (Defs. Fact, ¶ 48.) After the 1995 acquisition of Duro-Test, Michael Schacchter, as President of Litetronics, made all of Litetronics' day-to-day decisions, which Sorensen never countermanded or overrode. Litetronics and Duro-Test maintained separate HR Departments, separate employee manuals and separate rules in the workplace. No

25

officer or employee of either company ever set or implemented any personnel policy decisions for the other. (Defs. Facts, ¶¶ 23-24.) Unlike Duro-Test, Litetronics was never unionized. (Defs. Fact, ¶ 31.) Finally, their only connection was Litetronics' purchase of incandescent lamps from Duro-Test, which amounted to one-sixth of Duro-Test's total incandescent production, and which Litetronics purchased at 14% above market cost. (Defs. Facts, ¶¶ 118-19.) Such a connection does not rise to the level of being "highly integrated" as required by the Third Circuit in order to attach liability to Litetronics as a single employer under WARN.[55]

Plaintiffs also have no evidence to show that Durolite is a joint employer with Duro-Test under the WARN Act. Durolite was merely a holding company. (Defs. Fact, ¶ 34.) It conducted no business and manufactured no products. (Defs. Fact, ¶ 10.) Duro-Test's HR Department made all of the decisions with respect to Duro-Test's employees. (Defs. Facts, ¶¶ 47-48.) The Durolite and Duro-Test Board of Directors did not have identical compositions. (Defs. Fact, ¶ 38.) After the Acquisition, Sorensen, Charles Meyer, Anthony Pesavento, Scott Smith, Jack Stack and Frank Steck were the directors of Durolite. (See Stahl Decl. Ex. M.) Duro-Tests' Board consisted of Sorensen, Anthony Pesavento and Charles Meyer. (Defs. Fact, ¶ 38.) Durolite's and Duro-Test's parent/subsidiary relationship does not meet the factors necessary for joint-employer WARN Act liability. Nor have plaintiffs provided any facts to establish such liability. Rather, they lump Durolite with Litetronics and Sorensen and assert, in conclusory fashion, that they constitute a "single employer" under WARN. Plaintiffs' motion for summary judgment under the WARN Act should be denied.

## D.   Defendants are Entitled to the Affirmative Defenses to WARN Liability

Plaintiffs are not entitled to summary judgment on the WARN Act claim because they have failed even to address two important exceptions under the WARN Act: (a) the "unforeseeable business circumstances" exception under 29 U.S.C. § 2102(b)(2)(A); and (b) the "faltering business" exception under 29 U.S.C. § 2102(b)(1). Both exceptions apply here. Duro-

---

[55]   Pearson, 247 F.2d at 505 (citing Armbruster v. Quinn, 711 F.2d 1332, 1338 (6th Cir. 1983)).

Test's closure was unforeseen. As the evidence indicates, Duro-Test received an infusion of cash from the sale of Litetronics and was operating under the Forbearance Agreement with Fleet, which was intended to keep the company operating. Fleet made a sudden decision, on February 16, 2000, to stop advancing funds to Duro-Test under the revolving loan, and informed Duro-Test on February 18, 2000. (Defs. Facts, ¶¶ 193-214.) There was no warning provided to Duro-Test, and Fleet's sudden decision to stop funding forced Duro-Test to close. (Defs. Facts, ¶¶ 211, 219.)

Plaintiffs also provide no facts to overcome the faltering business exception under the WARN Act. As the summary judgment evidence makes clear, Duro-Test was in poor financial condition, and was actively pursuing an acquisition transaction and a refinancing transaction, at the time of its demise. The Forbearance Agreement with Fleet was intended expressly to permit Duro-Test to continue operations as it pursued these transactions. Moreover, the evidence is uncontroverted that any announcement of a plant closing would have undermined the sale or refinancing that Duro-Test was pursuing. (Defs. Facts, ¶¶ 199, 198, 227-28.) Because plaintiffs have no facts to address these matters, their summary judgment motion should be denied on all claims under the WARN Act.

Without first establishing that defendants even violated the WARN Act or addressing the exceptions above, plaintiffs assert that they are entitled to attorneys' fees. Despite their failure to provide evidence, plaintiffs claim that they are entitled to such an award based on the "undisputed liability of Sorensen and the corporate defendants pursuant to WARN." Plaintiffs' request for attorneys' fees is characterized by the same infirmities that warrant denial of their summary judgment motion, and it should be denied in all respects.

## IV.

## CONCLUSION

For all of the foregoing reasons, defendants Robert Sorensen, Durolite International, Inc. and Litetronics International, Inc. respectfully request that plaintiffs' Motion for Summary Judgment Motion be denied in all respects.

Dated: June 22, 2004

Respectfully submitted,

**KING, PAGANO & HARRISON**

By: _____
            Jeffrey W. Pagano, Esq.
425 Park Avenue
New York, New York 10022
(212) 223-4000
            and

**DENOIA & TAMBASCO**

By: _____
            Jeffrey W. Pagano, Esq.
501 Main Street
Toms River, New Jersey 08754
(732) 341-1030

Attorneys for Defendants and Third-Party Plaintiffs

28

**Exhibit A**

## CERTIFICATE OF SERVICE

I hereby certify that on June **22**, 2004, I caused the foregoing Memorandum of

Law to be served upon the following by depositing a true and correct copy of same with Federal

Express for overnight delivery, and addressed as follows:

Robert B. Bodzin, Esq.
Kleinbard, Bell & Brecker, LLP
1900 Market Street, Suite 700
Philadelphia, Pennsylvania 19103
Attorneys for Plaintiffs

Daniel P. Shapiro, Esq.
Goldberg Kohn Bell Black Rosenbloom &Moritz, Ltd.
55 East Monroe Street, Suite 3700
Chicago, Illinois 60603
Attorneys for Third-Party Defendant

Alison L. Galer, Esq.
Norris, McLaughlin & Marcus
721 Route 202/206
Bridgewater, New Jersey 08807
Local Counsel for Third-Party Defendant

_____
Gary A. Stahl

| From: | Linda Danelutti <ldanelutti@kleinbard.com> |
| To: | "'Carrigan, Catherine S.'" <Catherine.Carrigan@goldbergkohn.com>, |

"'gstahl@kph.com'" <gstahl@kph.com>, "'algaler@nmmlaw.com'" <algaler@nmmlaw.com>

| Date: | 6/1/04 4:21PM |
| Subject: | Sheinberg v. Sorensen |

Dear Counsel:

Attached please find Plaintiffs' Notice of Motion for Summary Judgment and
Memorandum of Law in support thereof. The original will be federal
expressed today and the exhibits to the Memorandum of Law will be federal
expressed on Wednesday.

  <<Order (motion for summary judgment) (00013534).DOC>>  <<Notice of
Plaintiff's Motion for Summary Judgment (00013545).DOC>>
 <<Memo of Law in Support of Motion for Summary Judgment (00010890-2).DOC>>
 <<Certificate of Service (00013535).DOC>>

Linda M. Danelutti
Legal Assistant
Kleinbard, Bell & Brecker LLP
1900 Market Street, Suite 700
Philadelphia, PA 19103
Voice 215-568-2000
Fax No. 215-568-0140
ldanelutti@kleinbard.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This communication is intended only for the use of the individual or entity
to which it is addressed and may contain information that is privileged and
confidential. If the reader of this message is not the intended recipient
or the employee or agent responsible for delivering the communication to the
intended recipient, you are hereby notified that any dissemination,
distribution or copying of this communication is strictly prohibited. If
you have received this communication in error, please notify us immediately
by telephone. Thank you.

| CC: | Robert Bodzin <rbodzin@kleinbard.com>, Mary Walk <mwalk@kleinbard.com> |

**From:** Gary Stahl
**To:** "algaler@nmmlaw.com".GWIA.KPH_PD;
"Catherine.Carrigan@goldbergkohn.com".GWIA.KPH_PD; "ldanelutti@kleinbard.com".GWIA.KPH_PD
**Date:** 6/1/04 6:50PM
**Subject:** Re: Sheinberg v. Sorensen

Bob --

Where is plaintiffs' Rule 56.1 Statement?  The way I read Local Civil Rule 56.1, you can't make a motion
for summary judgment without one.

--Gary


Gary A. Stahl, Esq.
KING, PAGANO & HARRISON
425 Park Avenue, NY, NY 10022
(212) 223-4000 (tel.); 4134 (fax)
gstahl@kph.com
-----------------------------------------------

The preceding e-mail message (including any attachments) is intended only for
the designated recipient(s) and may contain confidential, privileged or non-public information.
If you are not an intended recipient, please notify the sender by replying to this message
and then delete it from your system.  The use, distribution or reproduction of this message
by unintended recipients is not authorized and may be unlawful.


>>> Linda Danelutti <ldanelutti@kleinbard.com> 06/01/04 04:20PM >>>
Dear Counsel:

Attached please find Plaintiffs' Notice of Motion for Summary Judgment and
Memorandum of Law in support thereof.  The original will be federal
expressed today and the exhibits to the Memorandum of Law will be federal
expressed on Wednesday.

  <<Order (motion for summary judgment) (00013534).DOC>>  <<Notice of
Plaintiff's Motion for Summary Judgment (00013545).DOC>>
 <<Memo of Law in Support of Motion for Summary Judgment (00010890-2).DOC>>
 <<Certificate of Service (00013535).DOC>>


Linda M. Danelutti
Legal Assistant
Kleinbard, Bell & Brecker LLP
1900 Market Street, Suite 700
Philadelphia, PA  19103
Voice  215-568-2000
Fax No. 215-568-0140
ldanelutti@kleinbard.com


**************************************************************************
This communication is intended only for the use of the individual or entity
to which it is addressed and may contain information that is privileged and
confidential.  If the reader of this message is not the intended recipient

or the employee or agent responsible for delivering the communication to the
intended recipient, you are hereby notified that any dissemination,
distribution or copying of this communication is strictly prohibited. If
you have received this communication in error, please notify us immediately
by telephone. Thank you.

CC:           "mwalk@kleinbard.com".GWIA.KPH_PD; "rbodzin@kleinbard.com".GWIA.KPH_PD

**Mail Envelope Properties**  (40BD0830.717 : 0 : 29040)

| | |
|---|---|
| **Subject:** | Re: Sheinberg v. Sorensen |
| **Creation Date:** | 6/1/04 6:50PM |
| **From:** | Gary Stahl |

**Created By:**  gstahl@kph.com

| Recipients | Action | Date & Time |
|---|---|---|
| GWIA.KPH_PD | Transferred | 06/01/04 06:51PM |
| "algaler@nmmlaw.com" ("algaler@nmmlaw.com" | | |
| "Catherine.Carrigan@goldbergkohn.com" ("C | | |
| "ldanelutti@kleinbard.com" ("ldanelutti@k | | |
| "mwalk@kleinbard.com" CC ("mwalk@kleinbard | | |
| "rbodzin@kleinbard.com" CC ("rbodzin@klein | | |

| Post Office | Delivered | Route |
|---|---|---|
| GWIA.KPH_PD | | |

| Files | Size | Date & Time |
|---|---|---|
| MESSAGE | 4702 | 06/01/04 06:50PM |

**Options**

| | |
|---|---|
| **Auto Delete:** | No |
| **Expiration Date:** | None |
| **Notify Recipients:** | Yes |
| **Priority:** | Standard |
| **Reply Requested:** | No |
| **Return Notification:** | None |
| **Concealed Subject:** | No |
| **Security:** | Standard |
| **To Be Delivered:** | Immediate |
| **Status Tracking:** | Delivered & Opened |

Exhibit B

KING, PAGANO & HARRISON

425 PARK AVENUE

NEW YORK, NY 10022

33 NEWTOWN LANE
EAST HAMPTON, NY 11937
(631) 329-8455
FACSIMILE (631) 329-8435

(212) 223-4000

FACSIMILE: (212) 223-4134

WASHINGTON OFFICE
1730 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, DC 20006
(202) 371-6800
FACSIMILE: (202) 371-6770

June 16, 2004

**VIA TELECOPIER AND FIRST CLASS MAIL**

Robert B. Bodzin, Esq.
Kleinbard Bell & Brecker LLP
1900 Market Street, Suite 700
Philadelphia, Pennsylvania 19103

> **Re:** **Sheinberg, et al. v. Sorensen**
> **Civil Action No. 00-6041 (JLL) (U.S.D.C., D.N.J)**

Dear Bob:

We are preparing our response to plaintiffs' motion for summary judgment, which will be without prejudice to the motion to strike that defendants served earlier this week.

In connection with our opposition papers, we reviewed the Appendix that plaintiffs served with their summary judgment motion. Plaintiffs' Memorandum of Law contains numerous citations to testimony and documents that are supposedly found in Exhibit A of plaintiffs' Appendix. The fact is, however, that none of the testimony citations can be located in Exhibit A with the pagination that plaintiffs utilized. None of the documents that plaintiffs cite within Exhibit A can be found in the "Exhibit A" that plaintiffs served.

Plaintiffs' Memorandum of Law makes a reference to a "record" in the District Three litigation. At this juncture, however, we do not know which testimony and which materials plaintiffs intended to include within their "Exhibit A." What is clear, though, is that the Exhibit A that plaintiffs served is, by and large, useless.

In light of these infirmities, as well as plaintiffs' failure to prepare a Local Rule 56.1 Statement, plaintiffs' motion for summary judgment ought to be withdrawn.

Very truly yours,

Gary A. Stahl

cc:   Daniel P. Shapiro, Esq.
      Alison L. Galer, Esq.

P. 1

* * * COMMUNICATION RESULT REPORT ( JUN. 16. 2004   4:18PM ) * * *

TTI   KING, PAGANO&HARRISON

| TRANSMITTED/STORED JUN. 16. 2004   4:17PM<br>FILE MODE          OPTION | ADDRESS | RESULT | PAGE |
|---|---|---|---|
| 3712 MEMORY TX | G3   :12155680140----174301 | OK | 2/2 |

```
REASON FOR ERROR
  E-1) HANG UP OR LINE FAIL                  E-2) BUSY
  E-3) NO ANSWER                             E-4) NO FACSIMILE CONNECTION
```

# KING, PAGANO & HARRISON

425 Park Avenue
New York, New York 10022
(212) 223-4000
Facsimile: (212) 223-4134

Washington, D.C. Office
1730 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 371-6800
Facsimile: (202) 371-6770

## Facsimile Transmission

*This communication is confidential and is intended to be privileged pursuant to the attorney-client privilege and the work product doctrine.*

*If you did not receive all the pages indicated below, please call the number above.*

**To:**   Robert B. Bodzin, Esq.          **From:** Gary A. Stahl, Esq.

**Phone:**   (215) 496-7242          **Phone:** (212) 223-4000

**Fax:**   (215) 568-0140          **Fax:**   (212) 223-4134

**Date:**   June 16, 2004

*Pages sent (including cover page):*   **2**

## *Message*:

Re:   Sheinberg, et al. v. Sorenson
Civil Action No. 00-6041 (JLL)