<u>**NOT FOR PUBLICATION**</u>

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAWRENCE SHEINBERG and GILES HAZEL, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ROBERT SORENSEN, DUROLITE INTERNATIONAL, INC., LITETRONICS INTERNATIONAL, INC.,<br><br>    Defendants. | Civil Action No.: 00-6041 (JLL)<br><br><br><br>**O P I N I O N &<br>A M E N D E D**[1] **O R D E R** |

LINARES, District Judge:

    Presently before this Court is a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure by Defendants Robert Sorensen (hereinafter "Sorensen"), Durolite International, Inc. (hereinafter "Durolite")[2] and Litetronics International, Inc. (hereinafter "Litetronics") (hereinafter collectively "Defendants") seeking the dismissal of Plaintiffs' Lawrence Sheinberg and Giles Hazel, on behalf of themselves and others similarly situated, (hereinafter "Plaintiffs") Complaint.  Also before this Court is Plaintiffs' motion for partial summary judgment against all Defendants for liability on Plaintiffs' claims for violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 <u>et. seq.</u>, and

---

    [1]The Order filed on this date is amended to include the dismissal of two claims that were unopposed.

    [2]At oral argument, Plaintiffs voluntarily dismissed Defendant Durolite.

violations of the Workers Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. §

2101 et. seq.  The Court having considered the submissions in support of and in opposition to

these motions, as well as the oral arguments of the parties held on May 13, 2005, concludes that

questions of material fact exist in this case that generally preclude summary judgment in favor of

any party.  For the reasons that follow, Defendants' motion is denied in large part and granted in

part, and Plaintiffs' motion is denied.

## BACKGROUND[3]

The parties are quite knowledgeable about the underlying facts, and as the facts of this

case have already been set out in the parties' papers and on the record during oral argument on

May 13, 2005, the facts need not be reiterated in full for purposes of the present motion.  The

relevant facts, however, will be discussed below and in more length in the appropriate legal

discussion.

On March 5, 2002, Plaintiffs' motion for class certification was granted certifying

Plaintiffs' class of approximately three hundred fifty non-union employees of Duro-Test,

including (1) salaried management personnel; (2) engineers; (3) commissioned sales employees;

and (4) support staff.  These individuals had been employed by Duro-Test Corp. (hereinafter

---

[3]By Order dated March 18, 2005, this Court ordered that Defendants' motion to strike
Plaintiffs' Motion for Summary Judgment was denied as Plaintiffs had cured their failure to
timely file and serve a Statement pursuant to Local Civil Rule 56.1 and their failure to file a
Statement containing citations to the record was not fatal.  The Court further held that since
Plaintiffs failed to file a Statement pursuant to Local Civil Rule 56.1 in response to Defendants'
motion for summary judgment, the Court would treat the facts in Defendants' Rule 56.1
Statement, filed in support of defendants' Motion for Summary Judgment, dated June 1, 2004, as
admitted "unless controverted in [Plaintiffs'] briefs or contradicted by the evidence."  Longoria
v. New Jersey, 168 F. Supp. 2d 308, 312 n.1 (D.N.J. 2001).

"Duro-Test"), a New Jersey manufacturer of lighting products, with its manufacturing facility in Clifton, New Jersey, and its corporate headquarters in Bloomfield, New Jersey. Duro-Test is not a party to this case and is now a defunct Chapter 7 debtor that no longer exists. According to Defendants, Duro-Test manufactured mainly incandescent light bulbs and had a customer base consisting primarily of end users of lighting products.

Litetronics is an Illinois corporation that manufactures and markets various products for the lighting industry. According to Defendants, Litetronics specialized in the design and manufacture of halogen bulbs and lamps for the commercial lighting industry with its customer base being mainly distributors and wholesalers, as opposed to end users.

In October 1995, Litetronics and Duro-Test became subsidiaries of Durolite, which then owned 100% of each companies stock. Defendants assert that Durolite was a holding company that conducted no business of its own, had no employees, and no payroll of its own. In the mid-1990s Litetronics employed approximately 120 people and had an annual revenue of between $11 million and $14 million. Around the same time, Duro-Test had sales of between $50 million to $60 million per year, though it was faced with significant debt due to a number of factors.

Sorensen is an individual that resides in Illinois and became the President and owner of Litetronics in the early 1980s. Following the Acquisition in 1995 by Durolite of Litetronics and Duro-Test, Sorensen became the owner of 32% of the stock of Durolite, though held no stock in Duro-Test or in Litetronics, and became CEO of Durolite, Litetronics and Duro-Test. Throughout his time with these companies, Sorensen testified that he received his paychecks from Litetronics -- he never received a paycheck from Duro-Test or Durolite. (Pl. App., Ex. F, Sorensen Depo. dated Feb. 19, 2004 at 77:8-78:20).

3

In connection with the Acquisition, Durolite, Duro-Test and Litetronics, along with other affiliates, entered into a Loan and Security Agreement (hereinafter the "Loan Agreement") with Shawmut Capital Corp., the predecessor of former Third-Party Defendant Fleet Capital Corp. (hereinafter "Fleet"), for a $32 million loan.  As part of this Loan Agreement, Duro-Test and Litetronics were required to establish lockboxes.  In dispute is whether they had one lockbox containing all moneys, separate lockboxes containing only customer revenues, or separate lockboxes containing all moneys.

As an initial matter, the Court notes that at oral argument Plaintiffs voluntarily dismissed Defendant Durolite.  (Tr. at 55-56).  Also, on December 1, 2004, all claims by Defendants/Third-Party Plaintiffs against Third-Party Defendant Fleet were voluntarily dismissed with prejudice, and Fleet was dismissed from the case.  Therefore, the only remaining Defendants are Sorensen and Litetronics.

On Friday, February 18, 2000, the Duro-Test employees were advised by Duro-Test management that Duro-Test was permanently closing its doors.  It does not appear that the employees were given any notice that this closing was anticipated.  In the days and weeks that followed, many of the employees' paychecks bounced and they were not able to obtain their wages, and because Duro-Test failed to fund the self-insured health plan (purportedly paid for by the employees through payroll deductions) these employees also lost their health insurance.

On March 1, 2000, the union employees of Duro-Test filed a lawsuit in this Court for an injunction requiring Durolite, Litetronics, and Sorensen to resume funding the Duro-Test Health Plan.  Following a preliminary injunction hearing on March 16, 2000, which included testimony by Sheinberg and Sorensen, the Honorable Dickinson R. Debevoise found "Sorensen was a

4

fiduciary under ERISA and Litetronics was the instrument he used to violate his fiduciary duties."  See District Three, Internat'l Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL-CIO v. Sorensen, Civil Action No. 00-971 (hereinafter "District Three Litigation"), contained in Pl. App. Ex. B.  The District Three Litigation was ultimately settled and the case was closed on September 6, 2001.

This case was filed on December 14, 2000 by Plaintiffs on behalf of themselves and approximately 350 other non-union employees, seeking damages for (among other things) their unpaid wages, commissions and medical benefits, civil penalties, punitive damages, and reasonable attorneys' fees and costs.  Plaintiffs Complaint alleges the following six causes of action:

> (1) failure to maintain health insurance coverage and pay wages, benefits and sales commissions;
>
> (2) violations of Section 6 of FLSA, 29 U.S.C. § 206, and the New Jersey Wage Payment Statute, N.J.S.A. § 34:11-4.2 et seq. for failure to pay wages, sales commissions and benefits;
>
> (3) failure to make premium payments and maintain health insurance coverage in violation of the terms of the Plan and Section 502 of ERISA, 29 U.S.C. § 1132;
>
> (4) failure to fund the Plan and failing to safeguard Plan assets in violation of ERISA Section 404, 29 U.S.C. § 1140;
>
> (5) violation of WARN, 29 U.S.C. § 2101(a)(2) for the manner in which the plant closed; and
>
> (6) tortious conversion for withholding employee health care contributions and not forwarding such monies to Blue Cross.

## LEGAL STANDARD

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138

(3d Cir. 2001).  "A 'genuine' issue is one where a reasonable jury, based on the evidence presented, could hold in the movant's favor with regard to that issue."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  When considering a motion for summary judgment, all evidence must be reviewed and all inferences drawn therefrom must be in the light most favorable to the nonmoving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

Once the moving party files a properly supported motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact.  Fed. R. Civ. P. 56(e); <u>Anderson</u>, 477 U.S. at 256.  "The mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence of which the jury could reasonably find for the [nonmovant]."  <u>Id.</u> at 252.  In order to defeat summary judgment, the non-moving party is required to identify the specific evidence of record which supports the claim and upon which a verdict in its favor may be based, and may not rest upon a vague argument that the record somewhere contains facts sufficient to support its claims.  <u>Childers v. Joseph</u>, 842 F.2d 689, 694-95 (3d Cir. 1988).

Conclusory statements and arguments do not raise triable issues which preclude summary judgment.  <u>Ridgewood Board of Educ. v. N.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999).  Instead, the nonmoving party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  <u>Anderson</u>, 477 U.S. at 257 (citation omitted).  If the opponent fails to make a sufficient showing regarding an essential element of his or her case upon which he or she will bear the burden of proof at trial, all other facts are necessarily immaterial and summary judgment must be granted.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 321 (1986).

6

The Court's present task is to determine whether genuine issues of material fact exist and whether either Plaintiffs or Defendants are entitled to judgment as a matter of law.

## DISCUSSION

## A.   ERISA

This Circuit has held that "the question of whether a plaintiff has standing to sue under § 502 is a jurisdictional question that must be addressed prior to the merits." Miller v. Rite Aid Corp., 334 F.3d 335, 341 n.2 (3d Cir. 2003). It does not appear to be in dispute that the Duro-Test self-insured employee health benefit plan ("the Plan") is an "employee welfare benefit plan" under Section 3(l) of ERISA, 29 U.S.C. § 1002(l).

Defendants argue that Plaintiffs' claims under Section 502 of ERISA fail as a matter of law and should be dismissed because they lack standing under Section 502(a)(2), because they cannot pursue a claim for monetary relief under Section 502(a)(3), and because none of the Defendants are ERISA fiduciaries. In support of their own motion for summary judgment, Plaintiffs contend that summary judgment should be granted on the issue of whether Sorensen is a fiduciary under ERISA because it has already been adjudicated by Judge Debevoise in an earlier proceeding and Sorensen is precluded from relitigating this issue. In addition, even absent issue preclusion, Plaintiffs contend that Sorensen clearly falls within ERISA's definition of fiduciary. Plaintiffs also claim that Defendants are liable for their actions under ERISA because all of the Defendant corporations were under common control and therefore were a "single employer," for the purposes of imposing ERISA liability. Lastly, Plaintiffs argue that Sorensen's decision to allow ERISA plan assets, which belonged to the Duro-Test employees, to be placed into the Fleet lockbox was a per se violation of ERISA entitling Plaintiffs to judgment as a matter

7

of law.

**1.     Whether Plaintiffs' ERISA Breach of Fiduciary Duty Claim Fails**

**            a.     Whether Plaintiffs lack standing under Section 502(a)(2)**

Defendants are correct that Plaintiffs' Complaint fails to set forth exactly which

subsection of Section 502 of ERISA they are proceeding under.  Section 502 of ERISA sets forth

the civil enforcement provisions of ERISA.  29 U.S.C. § 1132. Section 502(a) provides, in

relevant part:

> (a) Persons empowered to bring a civil action
> A civil action may be brought-
>> (1) by a participant or beneficiary-
>>> (A) for the relief provided for in subsection (c) of
>>> this section, or
>>> (B) to recover benefits due to him under the terms
>>> of his plan, to enforce his rights under the terms of
>>> the plan, or to clarify his rights to future benefits
>>> under the terms of the plan;
>> (2) by the Secretary, or by a participant, beneficiary or fiduciary for
>> appropriate relief under section 1109 of this title;
>> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act
>> or practice which violates any provision of this subchapter or the
>> terms of the plan, or (B) to obtain other appropriate equitable relief
>> (i) to redress such violations or (ii) to enforce any provisions of this
>> subchapter or the terms of the plan. . . .

29 U.S.C. § 1132(a).

Section 502(a)(1) is essentially a claim for breach of contract, while Section 502(a)(2) is

for breach of fiduciary duty, and Section 502(a)(3) is a catchall provision permitting only

equitable relief for violations of ERISA that are not elsewhere adequately remedied.  See, e.g.,

Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 220 (2002) (stating that "§

502(a)(3), by its terms, only allows for equitable relief").  "The latter statutory provision also

encompasses a participant/beneficiary's right to bring an individual action for recovery related to a breach of fiduciary duty." Kaliszewski v. Sheet Metal Workers' Nat'l Pension Fund, 2005 U.S. Dist. LEXIS 23059, at *8 (W.D. Pa. July 19, 2005) (citing Varity Corp. v. Howe, 516 U.S. 489, 515 (1996)). In Variety Corp., the Supreme Court held that § 502(a)(3) authorizes lawsuits by participants or beneficiaries for individualized equitable relief for breach of fiduciary obligations. 516 U.S. at 507-15; see also Great-West Life & Annuity Ins. Co., 534 U.S. at 221 n.5.

While Plaintiffs' point heading states that "Plaintiffs Have Standing to Bring this Action Under Section 502(a)(2) of ERISA," their discussion relies on Section 502(a)(1)(A)-(B). The Court construes Plaintiffs Complaint as seeking relief under Section 502(a)(1) of ERISA. "That provision allows a suit [to obtain relief provided for in subsection (c) of this section,] to recover benefits due under the plan, to enforce rights under the terms of the plan, and to obtain a declaratory judgment of future entitlement to benefits under the provisions of the plan contract." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 108 (1989). The Court also construes the Complaint as seeking equitable relief under Section 502(a)(3) of ERISA for breach of fiduciary duty. Both provisions allow for suits by Plan participants and beneficiaries. Since Plaintiffs Complaint does not state an intention to sue on behalf of the Plan itself, Plaintiffs are not entitled to any remedy under Section 502(a)(2), which authorizes relief solely for the benefit of the Plan.

Therefore, Defendants motion is denied insofar as it seeks summary judgment on the basis that Plaintiffs lack standing to sue Defendants.

**b.     Whether Defendants are ERISA fiduciaries**

Defendants argue that it is improper to impose "fiduciary" status on Sorensen by relying on the District Three Litigation. This Court agrees. While Judge Debevoise did find in the

District Three Litigation that Sorensen is an ERISA fiduciary for this same Plan, and the Third

Circuit upheld that decision, Judge Debevoise's very thorough Opinion was based solely on a

preliminary injunction hearing.  The parties had very little, if any, discovery prior to the hearing,

and, while the identical issue was decided and the party against whom issue preclusion is being

asserted was the same party in the prior litigation, this Court cannot say that there was a final

judgment on the merits, nor were Defendants provided with a full opportunity to litigate this

issue.

Collateral estoppel, also known as issue preclusion, is invoked when "'(1) the identical

issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous

determination was necessary to the decision; and (4) the party being precluded from relitigating

the issue was fully represented in the prior action.'"  Henglein v. Colt Indus., 260 F.3d 201, 209

(3d Cir. 2001) (quoting Raytech Corp. v. White, 54 F.3d 187, 190 (3d Cir. 1995)).  Here,

Plaintiffs are asserting offensive non-mutual collateral estoppel.  See Parklane Hosiery Co. v.

Shore, 439 U.S. 322, 326-28 (1979).  Because the present action affords Defendants discovery

opportunities that were not available in the District Three Litigation, and that may cause a

different result, the has Supreme Court cautioned that it may be unfair to impose the offensive

use of collateral estoppel.  See id. at 330.  Further, the Supreme Court has explained that:

> [t]he purpose of a preliminary injunction is merely to preserve the relative
> positions of the parties until a trial on the merits can be held. Given this limited
> purpose, and given the haste that is often necessary if those positions are to be
> preserved, a preliminary injunction is customarily granted on the basis of
> procedures that are less formal and evidence that is less complete than in a trial on
> the merits. A party thus is not required to prove his case in full at a preliminary-
> injunction hearing, and the findings of fact and conclusions of law made by a
> court granting a preliminary injunction are not biding at trial on the merits.

<u>Univ. of Texas v. Camenisch</u>, 451 U.S. 390, 395 (1981).

Therefore, under all of these circumstances, this Court does not conclude that Judge Debevoise's Opinion in the District Three Litigation is binding on this Court.

In addition, Plaintiffs argue that even if this Court finds that the District Three Litigation is not binding, Sorensen and the corporate Defendants (acting as a "single employer") are still liable under ERISA. With regard to Sorensen, at issue is not Sorensen's title, or the fact that he was not mentioned as a trustee in the Plan, but rather whether he had control or authority over the Plan. ERISA provides that a person is a fiduciary with respect to a plan only to the extent that:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

This Court has thoroughly read the parties' statements of undisputed material facts and their exhibits, and whether or not Sorensen had any control over the Plan assets is in dispute. How each side can allege that there are no questions of material fact as to this issue is beyond belief. It appears from the testimony and facts presented in the District Three Litigation that Sorensen did exercise discretionary authority and control over the Plan assets. However, Defendants have presented evidence to this Court that may demonstrate the contrary. Defendants now appear to be asserting that the CFO and HR Manager were the Plan fiduciaries. However there is also testimony that Sorensen may have had some authority over the Plan. For instance, Sorensen testified that "if there were any problems [with the Duro-Test health insurance

program], it would have been brought to my attention but nothing was brought to my attention." (Pl. App. Ex. F, Sorensen Feb. 4, 2004 Depo. at 113:18-114:1).  Which evidence is ultimately believed is a question of fact for the jury.

      Further, whether Duro-Test was a fiduciary and breached its fiduciary duty is also a question of fact.  Since Duro-Test is not named as a Defendant, Plaintiffs seek to impose liability on Litetronics on the basis that these entities were under common control and therefore were a "single employer" for purposes of imposing ERISA liability.  Contrary to Defendants' position, employers can be fiduciaries under ERISA subject to fiduciary duties.  See Pegram v. Herdrich, 530 U.S. 211, 225 (2000); Adams v. Freedom Forge Corp., 204 F.3d 475, 492 (3d Cir. 2000); Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 133 (3d Cir. 1993) (stating that the corporate employer "was both an employer and a plan administrator," and subject to fiduciary duties in its role as plan administrator).  If it is determined that Duro-Test, and Litetronics under the "single employer" theory, were fiduciaries, then a breach of fiduciary duty can be asserted against Litetronics.  Given the current uncertainties as to who in fact was the Plan fiduciary, this Court cannot say as a matter of law whether these Defendants were or were not Plan fiduciaries.

      Viewed in its totality, the evidence submitted by the parties raise genuine issues of material fact as to whether Defendants were ERISA fiduciaries.

      **2.**    **Whether Sorensen's Decision to Allow ERISA Plan Assets to be Placed into the Fleet Lockbox was a Per Se Violation of ERISA**

As previously stated, Plaintiffs contend that Sorensen allowed ERISA Plan assets to be placed in a Fleet lockbox which constitutes a per se violation of ERISA. Defendants argue that Plan assets were not place in the Fleet lockbox.

The Secretary of Labor has defined "plan assets" "to include amounts that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets." Bannistor v. Ullman, 287 F.3d 394, 402 (5th Cir. 2002). "Other courts have similarly defined the term to 'include employee contributions to benefit plans which are withheld from employees' paychecks and for deposit into their benefit plans, even though the contributions have not actually been delivered to the benefit plan.'" Id. (quoting State v. Grizzle, 933 F.2d 943, 946 (11th Cir.), cert. denied, 502 U.S. 897 (1991)). The Fifth Circuit in Bannistor, the only published case having addressed this issue, held that a "lockbox" financing arrangement is not in itself a per se violation of ERISA. Id. at 402 n.2. The court found the arrangement problematic because of the defendants' "conscious decision to allow ERISA plan assets which rightly belonged to plan members (and which were supposed to be used for the benefit of those members) to be used for the benefit of the company." Id.

Sorensen's testimony at the preliminary injunction hearing on March 13, 2000 leads this Court to believe that employee contributions to the Plan were placed into the Fleet lockbox, but at issue is whether there was a separate account for these Plan assets. (Pl. App. Ex. A, Trial Tr., March 13, 2000, Sorenson Direct at 38:19-40:6). In addition, the Loan Agreement with Fleet states that Duro-Test and Litetronics must establish lockboxes into which they will "deposit all payments or other remittances received in the lockbox . . . ." (Stahl Decl., Ex. Q, § 6.2.5). This section of the Loan Agreement does not, as Defendants argue, demonstrate that only revenues were to be deposited into a lockbox. Although there is testimony that the lockboxes only

13

contained revenues from Duro-Test customers, there is also potentially conflicting testimony. This is also unclear in light of Defendants' contention that "Duro-Test's expenditures for wages and for all other expenses, including payments to maintain the health plan, were drawn from Duro-Test's borrowing base under its revolving loan with Fleet."  (Def. Opp. Br. at 5).

Under these circumstances, this Court cannot decide whether Plan assets were or were not placed in the Fleet lockbox, or whether they were co-mingled with accounts receivables.  A jury may find that the Plan assets were placed in the lockbox and that doing so improperly benefitted the Defendants.  Accordingly, questions of fact remain which preclude summary judgment at this time.

## B.    FAIR LABOR STANDARDS ACT ("FLSA")

Defendants argue that Plaintiffs' claims under the FLSA, 29 U.S.C. § 203(d), are without merit and should be dismissed because they cannot establish the requisite employment relationship with Defendants and because Sorensen has no liability as there is no evidence that he exercised operational control.  Plaintiffs contend that the undisputed evidence in this case reveals that Sorensen, Durolite, Duro-Test and Litetronics constitute a "single employer" within the contemplation of the FLSA.

The  Fair Labor Standard Act 29 U.S.C. § 203(d) defines "employer" as follows:

'Employer' includes any person acting directly or indirectly in the  interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

In Donovan v. Dialamerica Marketing, Inc., 757 F.2d 1376, 1382 (3d Cir. 1985) , the Third Circuit explained that "Congress and the courts have both recognized that, of all the acts of

14

social legislation, the Fair Labor Standards Act has the broadest definition of 'employee.'"  In

addition, "[i]n determining whether a worker is an 'employee' of another person or organization

within the purview of the FLSA, the Supreme Court, in <u>Rutherford Food Corp. v. McComb</u>, 331

U.S. 722, 91 L. Ed. 1772, 67 S. Ct. 1473 (1947), emphasized that the circumstances of the whole

activity should be examined rather than any one particular factor."  <u>Id.</u>

The Third Circuit has adopted the following test for determining "employee" status under

the FLSA:

> 1) the degree of the alleged employer's right to control the manner in which the
> work is to be performed; 2) the alleged employee's opportunity for profit or loss
> depending upon his managerial skill; 3) the alleged employee's investment in
> equipment or materials required for his task, or his employment of helpers; 4)
> whether the service rendered requires a special skill; 5) the degree of permanence
> of the working relationship; 6) whether the service rendered is an integral part of
> the alleged employer's business.

<u>Donovan</u>, 757 F.2d at 1382-83.  The court further explained that the "circumstances of the whole

activity" must be considered and that the presence or absence of any one of these factors is not

dispositive to the court's determination.  <u>Id.</u> at 1382.

Having considered all of the facts presented to this Court, the remaining questions of fact

include, but are not limited to: (1) whether the activities of Duro-Test and Litetronics were

controlled by the Board of Directors of Durolite, the Chairman of which was Sorensen; (2)

whether Sorensen was actively engaged in the management of Duro-Test despite the fact that

Crossland had become the CEO; (3) whether Defendants were responsible for making the

banking arrangements; (4) whether the corporation functioned primarily for Sorensen's profit;

and (5) whether Defendants had any supervisory authority over Plaintiffs.  The Court finds it

15

significant that Sorensen was paid exclusively by Litetronics throughout his tenure at Duro-Test, and that Sorensen was Durolite's largest shareholder.  Also, the belated resignation letter raises some question as to why such would be necessary if he had already resigned.  The Court simply cannot decide one way or the other on these facts as a matter of law.  Therefore, both motions are denied.

## C.   WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT ("WARN")

Defendants seek to have Plaintiffs' claims under the WARN Act dismissed because Defendants are not considered employers subject to WARN liability, and because they are entitled to assert the affirmative defenses of "unforeseeable business circumstances" and "faltering company."  Under the WARN Act, Plaintiffs argue that Sorensen and the corporate Defendants are "single employers" for purposes of imposing liability.

Pursuant to the WARN Act, 29 U.S.C. § 2101 (a)(1), "employer" means "any business enterprise that employs 100 or more employees, excluding part time employees."  When determining whether two affiliated companies will be considered a "single employer" for purposes of the WARN Act obligations, the factors to be considered include those listed in the DOL regulation: "(i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations."  20 C.F.R. § 639.3(2).

The definition of "employer" was discussed in the House Conference Committee report, stating that:

> The Conferees intend that a 'business enterprise' be deemed synonymous with the term company, firm or business, and that it consists of one or more sites of employment under the common ownership or control. For example, General

> Motors has dozens of automobile plants throughout the country. Each plant would
> be considered a site of employment, but as provided in the Bill, there is only one
> 'employer' - General Motors.

1988 U.S. Code Admin. News 2078, 2079, quoted in Carpenters Dist. Council v. Dillard Dep't

Stores, 778 F. Supp. 297, 316 (E.D. La. 1991) ("This language supports a conclusion that the

definition of employer in the WARN Act was not intended to include officers and directors of a

corporate employer.").

Based on a reading of Plaintiffs' Complaint, despite the argument in their briefs,

Plaintiffs have only sought to impose liability on their "employer."  Thus, since Sorensen cannot

be deemed Plaintiffs' employer under the WARN Act, this Court need to read into the Complaint

a claim against Sorensen since such a claim is unavailable.

As for the liability of Litetronics, the Court continues to find that there are questions of

material fact precluding judgment as a matter of law.  A fact intensive analysis is necessary and

the parties dispute many of the facts.

This decision also extends to Defendants' arguments that it is entitled to certain

affirmative defenses, i.e., the "unforeseeable business circumstances" (29 U.S.C. §

2102(b)(2)(A)) or the "faltering company" (29 U.S.C. § 2102(b)(1)) exceptions.  At trial a jury

may very well believe Defendants' assertion that Defendants had no warning that Fleet was going

to, or had any reason to, stop advancing funds under the revolving loan.  The Court unfortunately

cannot decide this issue based solely on the facts presented.

**D.**    **ATTORNEYS FEES PURSUANT TO THE WARN ACT AND ERISA**

Plaintiffs contend that Defendants' alleged violations of the WARN Act and ERISA

entitle the Plaintiffs to an award of attorneys fees.  However, Defendants argue that Plaintiffs are

not entitled to attorneys fees on these claims for the same reason that their motion for summary

judgment should be denied on these claims.  Since Plaintiffs' motion is denied, this request is

denied as moot.

## E.   TORTIOUS CONVERSION

Defendants assert that Plaintiffs' claims for tortious conversion fail as a matter of law

because there is no evidence that Defendants wrongfully exercised dominion and control over

another's property.  Plaintiffs argue that there are genuine issues of material fact as to whether

Sorensen and Litetronics converted the payroll deduction of the Duro-Test employees designated

for health insurance benefits for the benefit of the general creditors of Duro-Test.[4]  The Court

agrees with Plaintiffs.

Pursuant to New Jersey law, conversion is defined as "the wrongful exercise of dominion

and control over the property of another in a manner inconsistent with the other person's rights in

that property." McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 771 (3d Cir. 1990) (citing

Life Ins. Co. of Va. v. Snyder, 358 A.2d 859 (N.J. Passaic County Ct. 1976)).  Moreover,

ownership of the property by the injured party is an essential element of conversion, under New

Jersey law.  Life Ins. Co. of VA., 358 A.2d at 862.

If at trial, it is established that Sorensen placed Plan assets in a Fleet lockbox as further

collateral, Plaintiffs may be able to succeed on this claim.  Given that Sorensen was at all times

on the Litetronics payroll, was the Chairman and largest shareholder of Durolite, the holding

---

[4]In a footnote, Plaintiffs state that in the event they are denied relief under ERISA, they are entitled to summary judgment on their tortious conversion claims.  They did not initially move on this issue anticipating that Defendants would argue their tortious conversion claims are pre-empted by ERISA.

company, and may have been part of placing Plan assets in the Fleet lockbox, a jury could

possibly find that Litetronics also converted Plan assets.  The Court notes that this claim, as

Plaintiffs' suspect, will be preempted if Plaintiffs ultimately prevail on their ERISA claim.

Consequently, Defendants' motion is denied.

F.      **NEW JERSEY WAGE PAYMENT STATUTE ("NJWPS")**

        Defendants submit that Plaintiffs' claims under the NJWPS, N.J.S.A. § 34:11-1 to -67,

should be dismissed because they are without merit.  Specifically, their position is that Durolite

and Litetronicas are not the employer under the NJWPS, and Sorensen cannot be held personally

liable under the NJWPS.  According to Plaintiffs, a material issue of fact remains as to whether

Sorensen was an "officer" of Duro-Test at the time of the plant closing and, as such, this Court

cannot grant Defendants motion for summary judgment on this claim.[5]

_____Pursuant to the New Jersey Wage Payment Statute, N.J.S.A. § 34:11-4.1(a):

> 'Employer' means any individual, partnership, association, joint stock company,
> trust, corporation, the administrator or executor of the estate of a deceased
> individual, or the receiver, trustee, or successor of any of the same, employing any
> person in this State.
> For the purposes of this act the officers of a corporation and any agents having the
> management of such corporation shall be deemed to be the employers of the
> employees of the corporation.

The statute, however, does not define "officer."  "The remedial purpose of the Wage and Hour

Law dictates that it should be given a liberal construction."  N.J. Dep't of Labor v. Pepsi-Cola

Co., 784 A.2d 64, 66 (N.J. 2001).  Based on the plain language of the statute, if an individual is

managing the affairs of the corporation, they may be found to be an officer.

---

[5]Plaintiffs did not submit opposition to Defendants motion for summary judgment as to
Litetronics under the NJWPS.

The parties dispute whether Sorensen was an officer of Duro-Test when the plant was closed.  Plaintiffs argue that he was still an officer because he submitted a resignation letter two days after the plant closing.  Although Sorensen states this was a mistake because he resigned earlier, this is a question of fact for the jury.  If it is deemed at trial that Sorensen, although having allegedly resigned from his position at Duro-Test, was indeed functioning as an officer of Duro-Test, then liability may be imposed under the NJWPS if the claim is ultimately proven.

Therefore, Defendants motion for summary judgment on this claim is denied as to Sorensen, and granted as unopposed as to Litetronics.

## G.  PLAINTIFF'S "FIRST CAUSE OF ACTION"

The final issue before this Court is whether Plaintiffs' First Cause of Action should be dismissed.  Defendants claim that Count One fails to assert any theory of recovery.  Plaintiffs' First Cause of Action states in whole: "The Employer has failed to maintain health insurance coverage and pay wages, benefits and sales commissions."  Given that the subsequent causes of action assert that this very conduct resulted in violations of the FLSA, the NJWPS, and ERISA, this Court is inclined to agree with Defendants that Plaintiffs' First Cause of Action fials to assert any theory of recovery.  Since Plaintiffs did not address this argument in their opposition, and given the Court's inclination, the Court grants Defendants' motion for summary judgment as to the First Cause of Action.

## CONCLUSION[6]

For the reasons set forth above, it is on this 29th day of December, 2005,

**O R D E R E D** that Defendants' motion for summary judgment [Docket # 64] is

DENIED in part, and GRANTED with regard to the claim against Litetronics under the NJWPS

and the "First Cause of Action";and it is further

**O R D E R E D** that plaintiffs' motion for summary judgment [Docket # 65] is

DENIED.


  /s/ Jose L. Linares
JOSE L. LINARES,
UNITED STATES DISTRICT JUDGE

DATED: December 29, 2005

---

[6]While not advocating a new round of motions, these parties are specifically advised that if they choose to submit new motions for summary judgment at a later date, they should submit a joint statement of undisputed material facts with citations to the record for judicial economy. See Naporano v. United States, 834 F. Supp. 694, 696 n.3 (D.N.J. 1993) (noting with approval the agreement of all parties to a single statement of facts).