STARK & STARK
A Professional Corporation
993 Lenox Drive, Bldg. 2
P.O. Box 5315
Princeton, New Jersey 08543-5315
(609) 896-9060
Attorneys for Plaintiffs, Lawrence Sheinberg, Giles Hazel and others similarly situated

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAWRENCE SHEINBERG and GILES HAZEL<br>On behalf of themselves and others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>ROBERT SORENSEN and LITETRONICS INTERNATIONAL, INC.,<br>        Defendants. | CIVIL ACTION<br><br>No. 2:00cv6041 (CCC)<br><br>MOTION FOR RECERTIFICATON OF THE CLASS |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR RECERTIFICATION**

Of Counsel and On the Brief:
Martin P. Schrama
Melissa D. Doogan

## **TABLE OF CONTENTS**

TABLE OF CITATIONS……………………………………………………………………ii

STATEMENT OF FACTS……………………………………………………………...1

PROCEDURAL HISTORY……………………………………………………………2

LEGAL ARGUMENT…………………………………………………………………4

I. THE CLASS WAS PROPERLY CERTIFIED………….……………………………...4

      a. Numerosity…………………………………………………………………...5

      b. Commonality………………………………………………………………5

      c. Typicality……………………………………………………………………5

      d. Adequate Representation……………………………………………………6

      e. Predominance and Superiority………………………………………………7

II. THE CLASS WAS NOT PROPERLY DECERTIFIED….……..…………………8

III. EVEN IF THE CLASS WAS PROPERLY DECERTIFIED, THE DEFECTS HAVE
BEEN CURED AND RECERTIFICATION IS WARRANTED………………………11

IV. IF THE CLASS IS NOT RECERTIFIED, THE PLAINTIFFS WILL BE
IRREPARABLY HARMED………..……………………………………………………12

V. CONCLUSION……………………...……………………………………………...15

## TABLE OF CITATIONS

## CASES CITED

*Birmingham Steel Corp., v. Tennessee Valley Auth.*, 353 *F.3d* 1331, 1339 (11th Cir. 2003).......................................................................................................10

*Donnelly v. Johns-Manville Sales Corp.*, 677 *F.2d* 339, 342 (3d Cir. 1982)................9

*Eisen v. Carlisle & Jacquelin*, 391 *F.2d* 555, 562 (2d Cir. 1968)...........................11

*Halverson v. Convenient Food Mart, Inc.*, 458 *F.2d* 927 (7th Cir. 1972)..............9,10,13

*In re Nissan Motor Corp. Antitrust Litigation*, 1975 *WL* 166141(SD Fl. 1975)...........11

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 *F.3d* 283, 312 (3d Cir.1998)...................................................................................11

*Interpace Corp. v. Philadelphia*, 438 *F.2d* 401, 404 (3d Cir. 1971).........................12

*Johnston v. HBO Film Management Inc*, 265 *F.3d* 178, 184 (3d Cir. 2001)..............6,7

*Korn v. Franchard Corp.*, 456 *F.2d* 1206 (2d Cir. 1972)..........................10,11,12,13

*Mohan v. City of Wilmington*, 2002 *WL* 31341336 at *384 (3d Cir. 2002)..................6

*Swanson v. Wabash*, 577 *F.Supp.* 1308, 1326 (N.D. Ill. 1983)...............................10

*Taub v. Glickman*, 1970 *WL* 210 (S.D.N.Y. 1970)...............................................9

*Varacallo v. Massachusetts Mutual Life, Ins. Co.*, 226 *F.R.D.* 207 (D.N.J. 2005)..........8

*Zenith Laboratories, Inc. v. Carter-Wallace, Inc.*, 530 *F.2d* 508, 512 (3d Cir. 1976).....12

## STATUTES AND RULES

29 U.S.C. § 216..........................................................................................2,5

29 U.S.C. § 1001.......................................................................................2,6

29 U.S.C. § 2101........................................................................................2,6

*Fed.R Civ P.* 23.............................................................3,4,5,6,7,8,9,10,11,13

N.J.S.A. 34:11-4.2.......................................................................................2,6

## <u>TREATISES</u>

16 *A.L.R. Fed.* 883 § 4…………………………………………………………………9,11

16 *A.L.R. Fed.* 875……………………………….………………………………………..9

*Am. Jur. 2d* Parties § 74………………………………………………………………...9

## STATEMENT OF FACTS

In the early 1980s, Defendant Robert Sorensen ("Sorensen") was the president and owner of Litetronics International Inc. ("Litetronics").  Litetronics and Duro-Test ("Duro-Test") became subsidiaries of Durolite International Inc. ("Durolite")[1] in October 1995, by way of a combined venture.  Following the acquisition by Durolite of Litetronics and Duro-Test, Sorensen became the owner of 32% of the stock of Durolite and chairman and CEO of Durolite, Litetronics and Duro-Test.  In addition, Sorensen was very active in the management of these companies.  At the time of the acquisition, Durolite, Duro-Test and Litetronics entered into a loan and security agreement ("Loan Agreement") with Shawmut Capitol Corporation, the predecessor of Fleet Capitol Corporation ("Fleet").[2]  In connection with the Loan Agreement, Sorensen consented to Fleet's request that Duro-Test and Litetronics establish a lockbox.

In 1997, Duro-Test entered into a collective bargaining agreement with its union employees which provided that "in the event that Duro-Test chooses to close a plant, Duro-Test would provide continued medical insurance for separated employees for a period not to exceed three months." Duro-Test guaranteed that non-union employees would receive at least the same level of benefits offered to union employees.

By the fall of 1999, the financial condition of the combined entities became dire. Sorensen structured a transaction whereby Duro-Test's assets would be transferred to Litetronics, Litetronics would be relieved of its significant debt and the Duro-Test plant would close without warning to the Duro-Test employees.

---

[1] Plaintiffs voluntarily dismissed Defendant Durolite from this matter at oral argument on the parties' Motions for Summary Judgment.
[2] Fleet was a third party defendant in this matter, but entered into a settlement agreement with Defendants and was, therefore, dismissed from the case.

By the time the restructuring had run its course, Sorensen was 100% owner of the viable corporation, Litetronics, and Duro-Test was insolvent.  Fleet, Duro-Test's secured lender, was left holding all of Duro-Test's assets in a lockbox, while the beneficiaries of the Duro-Test employee health plans were left with unpaid medical and hospital bills and no health insurance.  This deficiency in coverage was due to Defendants' failure to fund Plaintiffs' self-insured health plan.  Sorensen permitted co-mingling of customer payments and Plaintiffs' payroll contributions for health insurance in the lockbox and allowed the plan assets to be used to pay corporate debts.

On February 18, 2000, the Duro-Test plant closed without any advanced notice and many of the paychecks and commission checks issued to Duro-Test employees bounced.  Employees who had incurred medical expenses (enormous expenses in some cases) learned that their health insurance provider would not honor their claims.  Employees who worked from February 11, 2000 through February 18, 2000, were not paid at all.

## PROCEDURAL HISTORY

The individual Plaintiffs, Lawrence Sheinberg and Giles Hazel, filed suit on December 14, 2000, asserting various claims.  The relevant claims include a violation of Section 16 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216; violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.; violation of the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. § 2101 et seq.; and violation of the New Jersey Wage Payment Statute, N.J.S.A. 34:11-4.2, et seq.  The class was certified on May 20, 2002. *See* Judge Hedges' Opinion of February 8, 2007, attached as Exhibit "A" at p.2 ¶ 1.

On June 22, 2006, just four days prior to the scheduled start of trial, Defendants filed a motion to decertify the class, alleging that adequate class notice had not been provided pursuant to *Fed.R Civ P.* 23(c)(2)(B). *See* Exhibit "A" at p.2 ¶ 2. The Court did not order a notice be mailed to the class members as required by *Rule* 23(b)(2), when it was certified on May 20, 2002, a decision to which Defendants did not object. *See* Judge Hedges' Opinion of August 22, 2006, attached as Exhibit "B" at p.4 ¶ 3. However, the Court did order Plaintiffs' counsel to contact the class members to determine their individual losses in an Order dated December 2, 2004. *See* Exhibit "B" at p.4 ¶ 4. The questionnaire was attached to a cover letter, which, among other things, outlined the nature of this action, the damages demanded, the names of class representatives, and the lead Plaintiff attorney's contact information. *Id.* Judge Hedges stated in his opinion that this letter and attached questionnaire met the notice requirement. *Id.* He did limit the class membership to those individuals who had responded to the letter. *Id.*

Prior to the rescheduled start of the trial, on August 26, 2006, the Court denied Defendants' decertification motion, finding that Plaintiffs' counsel's December 31, 2004, letter to class members, with an attached questionnaire, met the notice requirements of *Fed.R.Civ.P.* 23 (c)(2)(B).

Thereafter, on September 27, 2006, the Court wrote to all counsel adjourning the September 26, 2006, trial date to January 10, 2007. *See* Exhibit "A" at p.2 ¶ 3. Plaintiffs' counsel did not receive a copy of the Court's Order. In fact, Plaintiffs' counsel only learned of the trial date when Judge Hedges' chambers left a telephone message on the eve of trial. Plaintiffs' counsel immediately responded, advising the Court that it had not received the Order.

The Defendants then filed another motion to decertify the class. In February of 2007, Judge Hedges granted the Defendants' motion to decertify. The Court's decision was based upon a finding that the class was not being adequately represented because class counsel was not observing electronic filing procedures and did not receive electronic notices from the Court of the trial date. *See* generally Exhibit "A." Judge Hedges also states in his opinion that insufficient notice was given to the class, which is contrary to his August 22, 2006 opinion that the notice requirement had been met. *See* Exhibit "B" at p.4 ¶ 4.

This firm substituted as Plaintiffs' counsel on December 10, 2007. It is Plaintiffs' contention that the recent substitution of counsel has cured any defect to the extent that any such defect existed, relating to the class and that the class should be promptly recertified.

## LEGAL ARGUMENT

### I.   THE CLASS WAS PROPERLY CERTIFIED

*Fed.R.Civ.P.* 23(a) provides, in relevant part:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if 1) the class is so numerous that joinder of all members is impracticable, 2) there are questions of law or fact common to the class, 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and 4) the representative parties will fairly and adequately protect the interests of the class.

If these requirements are satisfied, the court also must find that the class action is maintainable under *Rule* 23(b)(1), (2) or (3), the predominance and superiority requirements. *See Fed.R.Civ.P.* 23(b).

Judge Hayden on May 20, 2002, found that each of the following criteria were met by the class and thus certified the class.

4

### a. Numerosity

Proper class certification requires a finding of numerosity, or that the putative class is "so numerous that joinder of all members is impracticable." *Fed.R.Civ.P.* 23(a)(1). Here, inasmuch are there are hundreds of potential class members; joinder would be impracticable. Thereby, this criterion was satisfied and the class was certified. This prong did not form the basis of the grounds for decertification.

### b. Commonality

Commonality does not require an identity of claims or facts among class members; instead, the commonality requirement will be satisfied if the named Plaintiffs share at least one question of fact or law with the grievances of the prospective class. *Fed.R.Civ.P.* 23(a)(2). In this case, Plaintiffs and putative class members share a similar theory of liability regarding the Defendants. All were employed by Duro-Test when the plant closed on February 18, 2000, leaving behind millions of dollars in unpaid wages and medical expenses. Accordingly, this criterion was satisfied and the class was certified. This prong did not form the basis of the grounds for decertification.

### c. Typicality

The claims of the class representatives must be typical of the class as a whole; when considering the typicality issue, the District Court must determine whether the named Plaintiffs' individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will be based. *Fed.R.Civ.P.* 23.

5

The relevant claims at issue include a violation of Section 16 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216; violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.; violation of the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. § 2101 et seq.; and violation of the New Jersey Wage Payment Statute, N.J.S.A. 34:11-4.2, et seq. While each member of the putative class may be entitled to a particular damage amount, the differences in the potential damage awards may be insufficient to deny class certification. *Mohan v. City of Wilmington*, 2002 *WL* 31341336 at *384 (3d Cir. 2002).

This criterion was satisfied and the class was certified. This prong did not form the basis of the grounds for decertification.

### d.  Adequate Representation

Class representatives must "fairly and adequately protect the interests of the class." *Fed.R.Civ.P.* 23(a)(4). In analyzing this criterion, the court must determine whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class. *See Johnston v. HBO Film Management Inc*, 265 *F.3d* 178, 184 (3d Cir. 2001). Plaintiffs' current counsel has endeavored to competently, responsibly and vigorously prosecute the suit on behalf of Plaintiffs. Therefore, this criterion was satisfied and the class was certified.

While Plaintiffs' former counsel admittedly failed to monitor the Court's docket in order to receive notice of filings, Plaintiffs' former counsel's failure constituted a minor oversight. Plaintiffs' former counsel's oversight was not intentional. In addition, Plaintiffs' current counsel has substituted into the case on behalf of the Plaintiffs.

Therefore, any potential question regarding adequate representation of the class has been remedied.

### e.  Predominance and Superiority

Predominance requires "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members." *Id.* Superiority mandates that the District Court determine that the class action is the best method of fairly and efficiently resolving the controversy. *Id.* To assist the court in analyzing cases for predominance and superiority, *Rule* 23(b)(3) includes a nonexclusive list of relevant factors to consider:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;  (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;  (D) the difficulties likely to be encountered in the management of a class action.

In this case, the Plaintiffs sought certification pursuant to *Rule* 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* The class was initially certified almost six years ago.  Since that time, the case has been prepared for trial on more than one occasion.  Plaintiffs' claims arise out of the same action and the same circumstances, the abrupt closing to the Duro-Test facility.  The questions of law and fact effecting the class predominate any individual questions that may arise.  This was true six years ago and the same applies today.  This criterion was

7

satisfied and the class was certified. This prong did not form the basis of the grounds for decertification.

Currently, the statutes of limitations on many of the class claims will expire, encouraging the individual members to file their own claims to preserve their individual rights. While the individual claimants are able to file their own actions, the interest of judicial economy and the best interest of the Plaintiffs would be to concentrate the litigation in one forum. The superiority prong of this rule behooves the court to find that the best possible method of fairly and efficiently resolving this controversy is by class action.

## II.    THE CLASS WAS NOT PROPERLY DECERTIFIED

On May 20, 2002, Judge Hayden certified the class. The Court did not order a notice be mailed to the class members as required by *Rule* 23(b)(2), a decision to which Defendants did not object. *See* Exhibit "B" at p.4 ¶ 2.

*Rule* 23(c)(2)(B) provides that the notice required, is to be the best practicable under the circumstances. *See* Exhibit "B" at p.4 ¶ 3 *citing Varacallo v. Massachusetts Mutual Life, Ins. Co.*, 226 *F.R.D.* 207 (D.N.J. 2005). *Rule* 23(c)(2)(B) is silent as to when notice is to be provided to class members. In December 2004, the Court required Plaintiffs to contact class members in order to determine their individual losses. *See* Judge Hedges Order of December 2, 2004, attached as Exhibit "C." The letter outlined the nature of the action, the damages demanded, the names of the representatives, and the lead Plaintiff attorney's contact information. *See* Exhibit "B" at p.4 ¶ 4. Judge Hedge's was satisfied that this questionnaire met the notice requirement. *Id.*

Two years later, this Court found that Plaintiffs' counsel did not provide adequate representation to the class. The Court stated that decertification was warranted because counsel did not properly notify the class, which is contrary to Judge Hedges prior opinion that the questionnaire met the notice requirement (*See* Exhibit "B" at p.4 ¶ 4), and also due to counsel's inadvertent non-receipt of the Courts order setting the trial date. *See* generally Exhibit "A."

Dismissal of claims brought by a class is an extreme remedy that should only be imposed in extraordinary circumstances. *Donnelly v. Johns-Manville Sales Corp.*, 677 *F.2d* 339, 342 (3d Cir. 1982). In *Taub v. Glickman*, 1970 *WL* 210 (S.D.N.Y. 1970), the court denied class certification and determined that the class would not be fairly and adequately represented by counsel. Plaintiffs' counsel in *Taub* did not seek certification of the class for more than three years after the suit was filed. In addition, counsel did not answer calendar calls, failed to respond to motions, prepared "boiler plate" answers without specific facts and were criticized for conduct that was of "questionable propriety." *Id*. at 2. The court stated that the conclusion was reached not to punish counsel, but rather to protect the class they seek to represent. *Id*. at 3. No such egregious conduct exists here.

The ability of Plaintiff's counsel is a factor to be considered in determining the adequacy of representation. *Am. Jur. 2d* Parties § 74. Only a showing of the most egregious misconduct on the part of plaintiff's lawyer will justify denial of class status. 16 *A.L.R. Fed.* 883 § 4. Thus, raising a question of misconduct for the court's consideration, except in the most flagrant situation, ordinarily will do no more than interject a collateral issue into the case. *Id*. Corrective measures other than denial of

9

class action status are available, as the court pointed out in *Halverson v. Convenient Food Mart, Inc.*, 458 *F.2d* 927 (7th Cir. 1972), 16 *A.L.R. Fed.* 875, noting that for the attorney himself, disciplinary action might be appropriate.

If, during the course of litigation, the trial court determines that class counsel has become inadequate, the court should seek to appoint new counsel before making the decision to decertify the class. *Birmingham Steel Corp., v. Tennessee Valley Auth.*, 353 *F.3d* 1331, 1339 (11th Cir. 2003); *Swanson v. Wabash*, 577 *F.Supp.* 1308, 1326 (N.D. Ill. 1983). In *Birmingham,* the court concluded that the District Court abused its discretion by decertifying the class without giving class counsel reasonable time to determine whether a new class representative could be substituted. In any event, counsel for plaintiff should be given adequate prior notice and hearing on the propriety of his activities before any decision affecting the status of the class action is taken. *Korn v. Franchard Corp.*, 456 *F.2d* 1206 (2d Cir. 1972).

The court pointed out in *Halverson,* 458 *F.2d* at 932, that the courts take a liberal view of *Rule* 23, even where the misconduct of plaintiffs' attorney was serious, stating that for misconduct on the part of plaintiffs' lawyer, the ordinary remedy was disciplinary action against the lawyer and remedial notice to class members. The court concluded that if the District Court judge dismissed the complaint because the *Rule* 23(a)(4) requirement as to adequacy of representation was not met, he erred in his assessment of the lawyer's conduct, the interests of the class members, and the policy behind *Rule* 23, and directed that on remand the District Court should consider plaintiffs' request for class status without regard to the presuit communication. *Id.*

In this case, Judge Hedges decertified the class without giving counsel the opportunity to engage alternate representation for the class.  After more than six years of litigation and preparation, the class through no fault of its own, was decertified, leaving hundreds of class members without representation and with looming statutes of limitations issues.  Since the time the class was decertified, new counsel has been appointed and has vigorously prosecuted the matter.  Counsel is competent and anxious to move forward towards a resolution encompassing the entire class.

### III.    EVEN IF THE CLASS WAS PROPERLY DECERTIFIED THE DEFECTS HAVE BEEN CURED AND RECERTIFICATION IS WARRANTED

*Rule* 23(a)(4) encompasses two distinct inquiries designed to protect the interests of absentee class members.  *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 *F.3d* 283, 312 (3d Cir.1998).   Adequate representation depends on two factors: a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and b) the plaintiff must not have interests antagonistic to those of the class.  *Eisen v. Carlisle & Jacquelin*, 391 *F.2d* 555, 562 (2d Cir. 1968).  Courts are not prone to deny a plaintiff the right to appear as a representative party for a class because of his counsel's conduct, so long as it appears that plaintiff will fairly and adequately protect the class whose interests are paramount.  16 *A.L.R. Fed.* 883 § 4.  The better disposition should be to substitute counsel to avoid undue delay in reaching the merits and prejudicing plaintiffs' rights.  *In re Nissan Motor Corp. Antitrust Litigation*, 1975 *WL* 166141(SD Fl. 1975).

In *Korn,* 456 *F.2d* at 1208, the plaintiffs' former attorney, whose actions were severely criticized by the District Court, withdrew from all connection with or

participation in the litigation.  New counsel entered the case on behalf of the plaintiffs'

class.  The court found that the substitution of attorneys drastically alters the nature of the

case.  *Id.*  It stated that "[s]ince our decision has to be forward-looking, determining the

case of proceedings from now on, we must take account of this new situation, just as we

would if we were considering an injunction for the future."  *Id.*  In addition, the court

stated that " [w]e are therefore called upon to consider the order, under the criteria of

*Rule* 23, solely on the first ground the court gave which, as we have just indicated, may

not, standing alone, have been enough in its eyes for withdrawal of class status."  *Id.*

In *Interpace Corp. v. Philadelphia*, 438 *F.2d* 401, 404 (3d Cir. 1971), the court

declared that a District Court is obliged to take cognizance of a changed factual situation

and may alter an earlier order accordingly.  Moreover, the Committee Notes on *Rule* 23

envision modification of a class certification 'if, upon fuller development of the facts, the

original determination appears unsound.'  *Zenith Laboratories, Inc. v. Carter-Wallace,*

*Inc.*, 530 *F.2d* 508, 512 (3d Cir. 1976).

On December 10, 2007, Stark & Stark filed an appearance of behalf of the Plaintiffs.

Since that time, counsel has vigorously pursued the position of the putative class of

Plaintiffs and the named Plaintiffs.  Prior counsel is no longer associated with the case.

Recertification is necessary because the class is adequately represented.  Both class

counsel and the named Plaintiffs satisfy the above criteria.  The two named Plaintiffs in

the litigation have interests similar in nature to the class in that all were employees of

Duro-Test at the time the plant closed.  They are familiar with the factual circumstances

of the case as well as being similarly situated to other class members in terms of

damages. Neither named Plaintiff has an interest antagonistic to the putative class and both are adequate representatives of the class.

## IV.    IF THE CLASS IS NOT RECERTIFIED THE PLAINTIFFS WILL BE IRREPARABLY HARMED

In *Korn,* 456 *F.2d* at 1206, the District Court revoked class action status. The Appellate Court reversed the District Court and remanded the action reinstating class action status. The court stated that the order cutting off the class suit was appealable because they were convinced that the action would go no further without class suit designation. *Id.* at 1214. In addition, the court found that there was no other available method and the case would die if class suit status were denied.

The Plaintiffs' class in this action waited over five years to be heard when the Court made its decision to decertify the class on the eve of trial. This determination effectively dismisses all of the claims of the Plaintiffs' class, forcing it to start over again in the class certification and trial processes. Plaintiffs have been severely prejudiced by these events.

At this time, the statues of limitations are about to run and the only protection truly available to many of the class members is in the instant suit. The class is made up of members who, in many instances, worked their entire life for Duro-Test only to be told that they had no insurance, pension or medical benefits. Many of them cannot afford medical insurance on their own or have gone to work in a new position, when they should be beginning their retirement.

One of the chief goals of *Rule* 23 is to protect claimants whose individual claims would be too small to justify separate litigation. *Id.* Class actions are a way for many to seek retribution where as individuals it would not be possible. In many instances, the

13

putative class members cannot afford representation and are strongly committed to bringing this action as a class.

Decertifying the class, while it takes away the claims of the class as a whole, enables each individual to pursue their own claims. *Halverson,* 458 *F.2d* at 932. Avoiding multiple separate trials on what is essentially the same dispute is consistent with the conservation of judicial and party resources. The efficient administration of justice and the interests of the class will not be served if the Court allows the class to remain decertified. The conduct of the Plaintiffs' prior counsel is not such a change in circumstances as to require a determination that the action is not now maintainable as a class action.

Plaintiffs maintain that the class should not have been decertified. They have cured any certification defect by retaining new counsel and should not be punished for, in the Courts' view, inadequate representation. The action now meets all the requirements for class suit status and should be maintained in that category. Counsel for Plaintiffs is ready to proceed immediately to trial in order to expeditiously resolve the matter.

Defendants would not be prejudiced by the recertification. In effect, the Defendants would benefit from litigating one case instead of hundreds that may be instituted by putative class members if the class is not recertified. While it has been almost a year since decertification, the Defendants at all times had notice that named Plaintiffs would see this action through and that class members, either individually or through recertification as a whole, would bring claims.

14

## **CONCLUSION**

Based upon the foregoing arguments and controlling legal precedent, Plaintiffs'

motion for class recertification must be granted.

Date: February 20, 2008                      Respectfully submitted,

                                             STARK & STARK
                                             A Professional Corporation

                                             By: _____
                                                  MARTIN P. SCHRAMA
                                                  MELISSA D. DOOGAN

15