**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAWRENCE SHEINBERG and GILES HAZEL, individually and on behalf of other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT SORENSEN, et al.,<br><br>Defendant. | Civil Action No.: 00-6041 (CCC)<br><br><br>OPINION |

**CECCHI, District Judge.**

**I.      INTRODUCTION**

Plaintiffs Lawrence Sheinberg and Giles Hazel (collectively, "Named Plaintiffs") bring this action on behalf of themselves and all other similarly situated individuals (collectively, "Plaintiffs") against Defendants Robert Sorensen ("Sorensen"), Durolite International, Inc. ("Durolite"), and Litetronics International, Inc. ("Litetronics") (collectively, "Defendants"), for paychecks and commission checks they or their co-workers were due when the Duro-Test Corporation ("Duro-Test") plant in Clifton, New Jersey was closed without notice. (ECF No. 1.) The Court granted preliminary certification of the settlement class and collective action and preliminary approval of the settlement on October 23, 2015. (ECF No. 207.) Presently before the Court is Plaintiffs' unopposed motion for final approval of the settlement. (ECF No. 208.) A final fairness hearing was held on February 10, 2016. For the reasons that follow, the Court grants final certification of the settlement class and collective action, approves the settlement agreement, awards litigation costs and expenses, and dismisses this action with prejudice.

## II. BACKGROUND

### A. Summary of Factual Allegations

Named Plaintiffs are former non-union employees of Duro-Test, a now-insolvent lighting manufacturer that owned and operated a manufacturing plant in Clifton, New Jersey. At all relevant times, Duro-Test was a wholly owned subsidiary of Defendant Durolite. Defendant Sorensen was the managing principal of Duro-Test and is now the managing principal of another lighting manufacturer, Defendant Litetronics.

Plaintiffs allege that all of Duro-Test's assets were transferred to Defendant Litronics and, as a result, Duro-Test's plant closed without any notice to the Duro-Test workers on February 18, 2000. Plaintiffs contend Defendants (1) failed to pay wages, sales commissions, and benefits; (2) failed to make health insurance premium payments and maintain health coverage; and (3) failed to provide timely notice of the Duro-Test plant closing. Plaintiffs sue for breach of fiduciary, statutory, and common law duties.

### B. Procedural History

This case has a lengthy procedural history and numerous judges have presided over this matter. On December 14, 2000, the Named Plaintiffs, Lawrence Sheinberg and Giles Hazel, initiated this action alleging causes of action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.; the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. § 2101, et seq.; Section 16 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216; and the New Jersey Wage Payment Act ("NJWPA"), N.J. Stat. Ann. § 34:11-4.1, et seq. Plaintiffs also brought claims for tortious conversion and an undefined "First Cause of Action," which were subsequently dismissed from the action.

2

On May 20, 2002, the Court granted Plaintiffs' request to certify this matter as a class action. The case proceeded through discovery and dispositive motions and was ready and listed for trial. On February 8, 2007, however, the class was decertified based upon questions regarding the adequacy of the representation of its legal counsel ("Prior Counsel"). On February 22, 2007, Plaintiffs filed a motion for reconsideration of the Court's order decertifying the class. The motion was denied. Plaintiffs then filed a Notice of Appeal, which was opposed by Defendants as untimely. Plaintiffs withdrew their appeal.

On or around August 24, 2007, Prior Counsel and the Named Plaintiffs met with Stark & Stark, the current counsel for the class ("Stark & Stark" or "Class Counsel"). On October 3, 2007, Prior Counsel filed a Withdrawal of Prior Counsel and Entry of Appearance for Stark & Stark. On February 20, 2008, Stark & Stark moved to recertify the decertified class. On April 4, 2008, the Court denied the motion for recertification of the decertified class, finding that the newly substituted Class Counsel was also not able to adequately represent the decertified class. On May 28, 2010, the United States Court of Appeals for the Third Circuit issued a ruling vacating the April 4, 2008 decision and remanded the case for further consideration of the motion for recertification.[1] Since 2010, this matter has been conferenced and mediated several times.

On October 23, 2015, the Court preliminary certified a settlement class and collective action and granted preliminary approval of the parties' settlement agreement. The Settlement Classes consist of 273 former non-union employees of Duro-Test. The Court preliminary certified,

---

[1] Before the Court issued a decision on the motion for recertification, the parties entered into mediation and resolved this matter. As such, the Court analyzes the adequacy of counsel in this Opinion.

3

for purposes of settlement only, two Settlement Classes. Subclass One is a collective action opt in class under § 16(b) of the FLSA, 29 U.S.C. § 216(b), which consisted of all class plaintiffs that have brought an FLSA claim as part of this lawsuit and, as of the date of the Final Approval Hearing on the settlement, have filed with the Court a Claim Form consenting to join this action as a plaintiff. Subclass Two is an opt out settlement class under Federal Rule of Civil Procedure 23(b)(3), which consists of all class plaintiffs that have brought claims pursuant to all other remaining claims. The subclasses were designed to facilitate an efficient resolution of the lawsuit, while maintaining strict compliance with the FLSA requirements. The Court appointed Martin P. Schrama and Stefanie Colella-Walsh, of Stark & Stark, to serve as Class Counsel, and designated Named Plaintiffs Lawrence Sheinberg and Giles Hazel as Class Representatives. The Court further preliminarily approved the settlement as fair, and approved the Notice and Claim Forms used.

According to this Court's Preliminary Approval Order, Class Counsel was instructed to use reasonable efforts to serve the Class Notice with Claim Form on the Class Plaintiffs by December 24, 2015. On December 10, 2015, Class Counsel sent the Class Notice packets to all 273 Class Plaintiffs via Certified Mail.[2] The notice informed each participant of the settlement of the claims they are releasing and the formula for calculating each individual's settlement payment. The notice also provided instructions for submitting a Claim Form.

---

[2] After diligent efforts by Class Counsel, 18 Class Notices remained undeliverable. Declaration of H. Matthew Taylor, Esq. in Support of Motion for Final Approval of Settlement, Entering Judgment Regarding Settlement, Awarding Costs and Dismissing Action With Prejudice ("Taylor Decl."), ECF No. 208-2 ¶ 15.

4

Class Counsel received 178 Claim Forms, resulting in a participation rate of 65.2 percent. There were no requests for exclusion. Class Counsel received three objections to the settlement. The Court held a fairness hearing on February 10, 2016; no objectors appeared at the hearing.

### C. Terms of the Settlement Agreement

The Settlement Agreement provides that Defendants will pay a gross settlement amount of $100,000. The Settlement Amount is inclusive of all Class Member payments as well as attorneys' costs and expenses. Settlement Class Members are eligible to receive payments under the Settlement Agreement, which are calculated based on a pro-rata share of the amount of the out-of-pocket damages, including lost wages, and healthcare as well as pension funds that were left unfunded. Stark & Stark currently seeks $40,000 in attorneys' costs, thereby leaving a net award of $60,000 to be partitioned between and among the Class Plaintiffs. In exchange for payment of this sum, Defendants will receive a waiver and release of all claims that were or could have been asserted based on the alleged facts in the Complaint.

The parties entered into this Settlement Agreement for the exclusive purpose of settling the disputed claims and resolving this matter. Defendants do not admit liability or any violation of law whatsoever to the Named Plaintiffs or the other Class Members, individually or collectively.

## III. CLASS CERTIFICATION

### A. Final Certification Under Federal Rule of Civil Procedure 23

Federal Rule of Civil Procedure 23 requires the Court to engage in a two-step analysis to determine whether to certify a class action for settlement purposes. First, the Court must determine if Plaintiffs have satisfied the prerequisites for maintaining a class action as set forth in Rule 23(a). If Plaintiffs can satisfy these prerequisites, the Court must then determine whether the

requirements of Rule 23(b) are met. See Fed. R. Civ. P. 23(a) advisory committee's note.

### i. Rule 23(a) Requirements

For a lawsuit to be maintained as a class action, four prerequisites must be met: (1) numerosity: the class is so numerous that joinder of all members is impracticable; (2) commonality: there are questions of law or fact that are common to the class; (3) typicality: the claims or defenses of the representative parties are typical of the claims or defense of the class; and (4) adequacy of representation: the representative parties will fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a).

#### 1. Numerosity

There is no minimum number of individuals necessary for certification of a class, and a prospective class that includes over forty members will generally satisfy the numerosity requirement. See Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001); Eisenberg v. Gagnon, 766 F.2d 770, 785-86 (3d Cir. 1985). Because the proposed settlement class consists of 273 potential members, the numerosity requirement is easily satisfied.

#### 2. Commonality

Plaintiffs must demonstrate that there are questions of fact or law common to the class to satisfy the commonality requirement. Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 157 (1982)). "Their claims must depend upon a common contention" such that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

The key issues in this case are whether Defendants (1) failed to pay wages, sales commissions, and benefits; (2) failed to make health insurance premium payments and maintain health coverage; and (3) failed to provide timely notice of the Duro-Test plant closing. These questions are common to all Class Members. Indeed, the only variation among Class Members is the <u>amount</u> of damages to which each Class Member suffered. Accordingly, the commonality requirement is satisfied here.

### 3. Typicality

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical of the claims . . . of the class. The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." <u>Barnes v. Am. Tobacco Co.</u>, 161 F.3d 127, 141 (3d Cir. 1998) (citation omitted). As with numerosity, the Third Circuit has "set a low threshold for satisfying" typicality, stating that "[i]f the claims of the named plaintiffs and putative Class Members involve the same conduct by the defendant, typicality is established . . . ." <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 183-84 (3d Cir. 2001); <u>see also</u> <u>Baby Neal v. Casey</u>, 43 F.3d 48, 58 (3d Cir. 1994). The typicality requirement "does not mandate that all putative Class Members share identical claims." <u>Newton</u>, 259 F.3d at 184 (citation omitted); <u>see also</u> <u>Hassine v. Jeffes</u>, 846 F.2d 169, 176-77 (3d Cir. 1988).

Here, the claims made by the Named Plaintiffs and those made on behalf of the other Class Members arise out of the same alleged conduct by Defendants—namely, the failure to pay wages, sales commissions, and benefits, and the failure to make insurance premium payments and maintain health coverage when the Duro-Test plant closed without notice. Consequently, the

7

Named Plaintiffs' claims are typical of those brought by the Class Members at large. See, e.g., In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 342 (3d Cir. 2010) (affirming the District Court's certification of the settlement class where "the claims of the class representatives [were] aligned with those of the Class Members since the claims of the representatives ar[o]se out of the same conduct and core facts"); Grasty v. Amalgamated Clothing & Textile Workers Union, 828 F.2d 123, 130 (3d Cir. 1987) (holding that the District Court did not abuse its discretion in finding the typicality requirement met because the claims brought by the named plaintiffs and those brought on behalf of the class "stem from a single course of conduct"). Thus, typicality is also satisfied.

### 4. Adequacy of Representation

Finally, the Court must consider adequacy of representation both as to the Named Plaintiffs and their Class Counsel under Rules 23(a) and (g). When making an adequacy determination, the Court must consider (1) the qualifications, experience, and general abilities of the plaintiffs' lawyers to conduct the litigation; and (2) whether the interests of the named plaintiffs are sufficiently aligned with the interests of the absentees. See In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 532 (3d Cir. 2004); In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 800 (3d Cir. 1995). Here, Class Counsel has knowledge of the law and experience litigating complex class actions and obtaining class action settlements. As outlined by the procedural history above, in the years since Stark & Stark took over as Class Counsel, Class Counsel has identified and investigated potential claims and participated in numerous conferences and mediations and proved themselves adequate and willing to commit their resources to face the challenges posed by this litigation. See Fed. R. Civ. P. 23(g). Further, there is no indication the Named Plaintiffs' interests are antagonistic to those of the class. Consequently, the adequacy

8

requirement has been met and the Settlement Class in this case has demonstrated compliance with the elements of Rules 23(a) and (g).

### ii. Rule 23(b)(3) Requirements

The Court must next address the question of whether the class comports with the requirements of Rule 23(b). Under Rule 23(b)(3), the Court must find that "the questions of law or fact common to Class Members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As explained below, this class action meets the predominance and superiority requirements.

#### 1. Predominance

To satisfy the predominance requirement, parties must do more than merely demonstrate a "common interest in a fair compromise;" rather, they must provide evidence that the proposed class is "sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997); see also Sullivan v. DB Invs., Inc., 667 F.3d 273, 297 (3d Cir. 2011) (noting that the predominance requirement is "more stringent" than the Rule 23(a) commonality requirement). The Third Circuit has repeatedly held predominance exists where proof of liability depends on the conduct of the defendant. See Sullivan, 667 F.3d at 298-301 (reaffirming the Third Circuit precedent supporting this holding). Here, Plaintiffs have alleged a common course of conduct—specifically, Defendants' failure to pay wages, sales commissions, and benefits and the failure to make insurance premium payments and maintain health coverage. Plaintiffs would present common evidence regarding the nature of their lost wages and unpaid healthcare costs.

Although there are some factual differences between Class Members, including the amount of unpaid wages, sales commissions, and out-of-pocket healthcare costs, these differences impact damages calculations only. Where there are common factual issues that determine liability and those issues predominate, the need to calculate damages on an individual basis will not prevent certification. See In re Cmty. Bank of N. Va., 418 F.3d 277, 306-07 (3d Cir. 2005). For these reasons, the Court finds that issues common to the prospective class predominate the individual issues.

### 2. Superiority

To satisfy the superiority requirement, the Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." Georgine v. Amchem Prods., Inc., 83 F.3d 610, 632 (3d Cir. 1996) (citing Katz v. Carte Blanche Corp., 496 F.2d 747, 757 (3d Cir. 1974) (en banc)). One consideration is the economic burden Class Members would bear in bringing suits on a case-by-case basis. Class actions have been held to be especially appropriate where "it would be economically infeasible for [individual Class Members] to proceed individually." Stephenson v. Bell Atl. Corp., 177 F.R.D. 279, 289 (D.N.J. 1997). Another consideration is judicial economy. In a situation where individual cases would each "require[] weeks or months" to litigate, would result in "needless duplication of effort" by all parties and the Court, and would raise the very real "possibility of conflicting outcomes," the balance may weigh "heavily in favor of the class action." In re Corrugated Container Antitrust Litig., 80 F.R.D. 244, 252–53 (S.D. Tex. 1978); see also Klay v. Humana, Inc., 382 F.3d 1241, 1270 (11th Cir. 2004) (finding a class action to be the superior method because it would be costly and inefficient to "forc[e] individual plaintiffs to repeatedly

prove the same facts and make the same legal arguments before different courts"), abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008); Sollenbarger v. Mountain States Tel. & Tel. Co., 121 F.R.D. 417, 436 (D.N.M. 1988) (finding that, in contrast to the multiple lawsuits that members of a class would have to file individually, "[t]he efficacy of resolving all plaintiffs' claims in a single proceeding is beyond discussion").

First, the record in this case does not indicate an interest among Class Members in individually controlling the prosecution of separate actions. As stated above, no Class Members have opted out of the class action. Second, Class Counsel is not aware of any other pending individual lawsuits arising from the same allegations as those in this case. This also suggests a lack of interest in pursuing claims individually. Third, this Court is an appropriate forum for the lawsuit; it has subject matter jurisdiction over the claims in this case and personal jurisdiction over the parties. Finally, approval of the proposed settlement would negate any trial. See Amchem, 521 U.S. at 620. Thus, the superiority requirement is satisfied.

### B. Final Certification Under the FLSA

To grant final certification in a FLSA action, the Court must be satisfied that individuals in the class are "similarly situated." Zavala v. Wal-Mart Stores, Inc., 691 F.3d 527, 536 (3d Cir. 2012). To determine whether members of a collective action are similarly situated, the Court evaluates various factors, including "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." Id. at 536-37. The Court considers all relevant factors and makes a factual determination on a case-by-case basis. Id. at 536.

11

Class Members are all former non-union employees who worked in Duro-Test's Clifton, New Jersey plant. As discussed above, Plaintiffs all assert the same claims and seek the same form of relief: compensation for moneys owed when the Duro-Test plant closed without notice. The Court is satisfied that, for the purposes of settlement only, the members of the FLSA collective action who submitted a Claim Form have satisfied the requirements for FLSA collective action certification.

## IV.     FINAL APPROVAL OF THE SETTLEMENT

### A.     Fairness of the Class Action Settlement

Having found that final certification of the class for settlement purposes is warranted, the Court must now evaluate the fairness of the class action settlement pursuant to Rule 23(e). Under Rule 23(e), approval of a class settlement is warranted only if the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Acting as a fiduciary responsible for protecting the rights of absent class members, the Court is required to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." In re Cendant Corp. Litig., 264 F.3d 201, 231 (3d Cir. 2001) (quoting Gen. Motors Corp., 55 F.3d at 785). This determination rests within the sound discretion of the Court. Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975). In Girsh, the Third Circuit identified nine factors to be utilized in the approval determination. Id. at 157. These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of

>reasonableness of the settlement fund in light of the best possible recovery; (9) and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Id. (internal quotation marks, alterations, and citation omitted).

Additionally, a presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters, and there are few objectors. Warfarin, 391 F.3d at 535. Finally, settlement of litigation is especially favored by courts in the class action setting. "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." Gen. Motors Corp., 55 F.3d at 784; see also Warfarin, 391 F.3d at 535 (explaining that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged").

Turning to each of the Girsh factors, the Court finds as follows:

### i. Complexity, Expense, and Likely Duration of the Litigation

The first factor is intended to capture "the probable costs, in both time and money, of continued litigation." Gen. Motors Corp., 55 F.3d at 812 (internal quotations and citation omitted).

The instant litigation was commenced in 2000 and the duration of this action would only be further delayed absent approval of the settlement. Indeed, significant time, effort, and expense would be incurred to brief dispositive motions and a motion to certify the class, prepare for and complete trial, submit post-trial submissions, and pursue likely appeals. By reaching a settlement, the parties have avoided the significant expenses connected with these steps. Lastly, the settlement provides immediate and substantial benefits for the settlement class. For these reasons, this factor weighs in favor of approval.

13

### ii.     Reaction of the Class to the Settlement

This second factor "attempts to gauge whether members of the class support the settlement." In re Lucent Techs., Inc., Sec. Litig., 307 F. Supp. 2d 633, 643 (D.N.J. 2004) (internal quotation marks and citation omitted). The Third Circuit has found that "[t]he vast disparity between the number of potential Class Members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement." Cendant Corp., 264 F.3d at 235.

As stated, of the 178 Class Members to file Claim Forms, only three objected to the settlement and its terms and there were no requests for exclusion. This means that less than two percent of the Class Members have objected to the settlement and its terms. These numbers are extremely low. Upon consideration of the substance of the objections, the issues raised by the objectors do not present an obstacle to final approval of the settlement. Gary Padawer and Michael Napoli objected to the settlement solely based on the amount of damages. Robert Kantor objected to the settlement based on the amount of damages and because he believes Defendant Sorensen should be criminally prosecuted. The Court finds these objections unpersuasive. Objections based solely on the amount of the award lack merit. See Hall v. AT&T Mobility LLC, Civil Action No. 07-5325 (JLL), 2010 WL 4053547, *8 (D.N.J. Oct. 13, 2010) ("[The settlement terms] were the result of an arm's length negotiation between Class Counsel and ATTM. Such negotiations resulted in a compromise . . . . Thus, the fact that the Harter Objectors would prefer that all Class Members receive greater cash benefits . . . has no bearing on whether the terms of the Settlement Agreement itself are fair and reasonable. After all, a settlement is, by its very nature, a compromise that naturally involves mutual concessions."). As discussed in more detail below, based on the

risks in establishing liability and damages, the amount of the settlement is fair and reasonable. Further, Mr. Kantor's second objection is unfounded since this is a civil case for damages. Therefore, this factor weighs in favor of approval.

### iii. The Stage of the Proceedings and the Amount of Discovery Completed

The Court should consider the stage of the proceedings and the amount of discovery completed in order to evaluate the degree of case development that Class Counsel have accomplished prior to settlement. "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." Cendant Corp., 264 F.3d at 235 (quoting Gen. Motors Corp., 55 F.3d at 813). "Generally, post-discovery settlements are viewed as more likely to reflect the true value of a claim as discovery allows both sides to gain an appreciation of the potential liability and the likelihood of success." In re Auto. Refinishing Paint Antitrust Litig., 617 F. Supp. 2d 336, 342 (E.D. Pa. 2007) (citing Bell Atl. Corp. v. Bolger, 2 F.3d 1304, 1314 (3d Cir. 1993)).

The Court notes that this case has been litigated for years. Certainly, a fair amount of discovery has occurred here. In addition, the Settlement was reached after extensive arm's-length negotiations and mediation sessions. "Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent." In re Elec. Carbon Prods. Antitrust Litig., 447 F. Supp. 2d 389, 400 (D.N.J. 2006) (citation omitted). Based on the extensive discovery and negotiations, the Court concludes that Class Counsel had a thorough appreciation of the merits of the case prior to settlement. Accordingly, this factor weighs in favor of approval.

### iv. Risks of Establishing Liability

The risks of establishing liability should be considered to "examine what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." Cendant Corp., 264 F.3d at 237 (quoting Gen. Motors Corp., 55 F.3d at 814). "The inquiry requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" In re Safety Components Int'l, Inc. Sec. Litig., 166 F. Supp. 2d 72, 89 (D.N.J. 2001) (quoting In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 319 (3d Cir. 1998)).

Class Counsel has outlined risks to establishing liability, as exemplified by the fact Defendants have prevailed on decertifying the class in the past and this litigation has spanned fifteen years. In contrast, the settlement provides immediate and certain recovery for the Class Members. All Class Members who filed a Claim Form will receive a benefit in the form of payment for overtime hours worked. In light of the uncertainty of success and the certain, immediate benefit provided by the settlement, this factor weighs in favor of approval.

### v. Risks of Establishing Damages

This factor, like the factor before it, "attempts to measure the expected value of litigating the action rather than settling it at the current time." Cendant Corp., 264 F.3d at 238 (quoting Gen. Motors Corp., 55 F.3d at 816). Class Counsel has outlined several risks to establishing damages. First, even if Plaintiff could establish liability, the proper measure of damages is unclear. Second, Class Counsel is concerned, based on financial information provided by Defendants, that the Defendants, already restructuring from bankruptcy, would be unable to pay any monies ultimately proven in the lawsuit. The Court agrees that significant risks exist in establishing damages. Thus,

this factor weighs in favor of approval.

### i. Risks of Maintaining Class Action Status Through Trial

While the continued significance of this factor in the settlement-only context is unclear, see Prudential Ins. Co., 148 F.3d at 321, this factor weighs in favor of approval. The Court may, at any time before final judgment, decide to decertify a class if the class proves to be unmanageable. Fed. R. Civ. P. 23(c)(1)(C). Defendants may choose to challenge the certification of a litigation class if the case were to move forward. Thus, because there are significant risks in maintaining class certification, this factor weighs in favor of approval.

### ii. The Settling Defendant's Ability to Withstand a Greater Judgment

This factor examines whether Defendants "could withstand a judgment for an amount significantly greater than the settlement." Cendant Corp., 264 F.3d at 240. This factor weighs in favor of settlement. As discussed above, Class Counsel has determined settlement is appropriate in light of Defendants' current financial condition. Moreover, even if Defendants had the ability to pay more, it does not mean they would be required to pay more. See Warfarin, 391 F.3d at 538 (noting that "the fact that [defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached"). Thus, this factor weighs in favor of approval.

### iii. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The eighth and ninth factors, concerning the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation, weigh in favor of approval.

17

> The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. The percentage recovery, rather must represent a material percentage recovery to plaintiff in light of all the risks considered under Girsh.

In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 235, 263 (D.N.J. 2000) (internal quotation marks and citation omitted).

A proposed settlement is presumed to be fair and reasonable when it is the result of arm's-length negotiations by experienced counsel. See Warfarin, 391 F.3d at 534. Under the terms of the settlement, Class Members will recover $60,000 in unpaid wages and other damages. Class Counsel has stated this amount is fair and reasonable given the history of the case, the complex legal and factual issues involved, and the Defendants' poor financial condition. The opinion of experienced counsel supporting the settlement is entitled to considerable weight. See Reed v. Gen. Motors Corp., 703 F.2d 170, 175 (5th Cir. 1983). Accordingly, these factors weigh in favor of approval.

### iv. Summary of Girsh Factors

In conclusion, the nine Girsh factors weigh in favor of approval. The settlement agreement was reached after arm's-length negotiations between counsel and after completion of, and access to, a significant amount of discovery. Therefore, the settlement represents a fair, reasonable, and adequate result for the settlement class considering the substantial risks Plaintiffs face and the immediate benefits provided by the settlement. See Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 255-56 (E.D. Pa. 2011).

## B. Fairness of the Collective Action Settlement

To be bound by a FLSA collective action settlement, potential class members must

affirmatively "opt in." See Lusardi v. Lechner, 855 F.2d 1062, 1070-71 (3d Cir. 1988). If they do not opt in, they can bring a separate suit at a later time. See id. "This stands in contrast to a Rule 23(b)(3) 'opt out' class action. As a result, the Court in the FLSA collective action does not serve the same role as the guardian of absentee class members' rights." Keller v. TD Bank, N.A., Civil Action No. 12-5054, 2014 WL 5591033, at *13 (E.D. Pa. Nov. 4, 2014).

When evaluating a settlement of FLSA claims, the Court must determine that "the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" See Brumley v. Camin Cargo Control, Inc., Nos. 08-1798, 10-2461 and 09-6128, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982)). For the same reasons discussed above, the Court finds the settlement is fair. A proposed settlement resolves a "bona fide dispute" when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," rather than "a mere waiver of statutory rights brought about by an employer's overreaching." In re Chickie's & Pete's Wage & Hour Litig., No. 12-6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014) (quoting Lynn's Food, 679 F.2d at 1354). This requirement is met here, where the Plaintiffs brought suit in federal court over allegedly uncompensated time and the settlement is designed to provide due compensation. For these reasons, the Court approves the settlement of the FLSA collective action claims.

### C.     Attorneys' Costs and Expenses

Class Counsel seeks an award of $40,000 in attorneys' costs and expenses. This represents 40 percent of the common fund created by the Settlement Agreement. There have been no objections to Class Counsel's request for costs. Class Counsel does not seek attorneys' fees.

19

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." Safety Components, Inc, 166 F. Supp. 2d at 108 (citing Abrams v. Lightolier, Inc., 50 F.3d 1204, 1225 (3d Cir. 1995)). The amount requested by Class Counsel is intended to reimburse Class Counsel for filing fees; costs for photocopying expenses and telephone and facsimile charges; costs for postage, messenger, and express mail service charges; witness fees and costs associated with expert witnesses and consultants; and costs associated with computer-assisted legal research. See Plaintiffs' Brief in Support of Motion for Final Approval of Settlement, Entering Judgment Regarding Settlement, Awarding Costs and Dismissing Action With Prejudice, ECF No. 208-1 at 23. Class Counsel has provided documentation showing that its costs total $47,645.61. In light of the documentation of these costs provided by Class Counsel and the circumstances of this case, the Court finds the requested award of costs reasonable here.

## V.     CONCLUSION

For the reasons set forth above, the Court certifies the Rule 23 class action and the FLSA collective action, approves the proposed settlement agreement in full, awards Class Counsel the attorneys' costs as requested, and dismisses this action with prejudice. An appropriate order accompanies this Opinion.

DATED: _June 14_, 2016

_____
**CLAIRE C. CECCHI, U.S.D.J.**